Filed 3/29/16  Kieu v. Quinal CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| QUYNH DINH KIEU,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>LONNIE QUINAL,<br><br>    Defendant and Respondent. | G051072<br><br>(Super. Ct. No. 30-2013-00657399)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Frederick Paul Horn, Judge.  Affirmed.

Law Offices of Jeffrey S. Benice and Jeffrey S. Benice for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

\*          \*          \*

Plaintiff Quynh Dinh Kieu (Kieu) appeals after the trial court entered summary judgment against her in an action alleging breach of a partnership agreement and misrepresentation concerning a residential real property investment. She argues the court erred by granting defendant Lonnie Quinal's (Quinal)[1] motion for summary judgment, and abused its discretion by denying leave to file a second amended complaint. For the reasons expressed below, we affirm.

I

FACTS AND PROCEDURAL HISTORY

In August 2013, Kieu filed the operative first amended complaint against Quinal. Kieu alleged defendant Lonnie Quinal breached a written and oral partnership agreement concerning investment real property located on Carmella (*sic* Camellia) Court in Corona, California. Kieu alleged she and "defendants" negotiated an oral partnership agreement to purchase the property. The parties jointly paid the down payment and related costs. The partnership terms provided Quinal would take title, and after the property was sold, "all profits and rents" would be split evenly between Kieu and Quinal. But without Kieu's knowledge, Quinal sold the property and did not tender the net sales proceeds to Kieu or provide an accounting. Kieu sought lost profits and rents of no less than $250,000.

The complaint also contained a cause of action for intentional or negligent misrepresentation. Kieu alleged Quinal "specifically promised through Cindy Pham, [Quinal's] mother, that all net proceeds of the property's sale would be evenly distributed between the parties." Quinal, however, never intended to pay "plaintiffs" and wrongfully converted the profits.

---

[1] Quinal has not filed a respondent's brief. Nonetheless, we "'examine the record on the basis of appellant's brief and . . . reverse only if prejudicial error is found.'" (*DeSilva Gates Construction, LP v. Department of Transportation* (2015) 242 Cal.App.4th 1409, 1412.)

Quinal moved for summary judgment, contending no partnership agreement ever existed between her and Kieu. To meet her initial burden, Quinal submitted a declaration explaining she agreed to have her name placed on title to the Camellia Court property, which was purchased in October 2011. Quinal agreed to this as a favor to her mother, Cindy Pham, but had nothing to do with funding the purchase, had no personal knowledge how her mother paid for the property, and had never heard of Kieu until Kieu filed this lawsuit. Quinal declared she did not receive any money or other consideration in either the purchase or sale of the property. Quinal asserted she never authorized or instructed her mother to make representions or form a partnership on her behalf and knew nothing about whether Kieu had invested in the Camellia Court purchase.

Quinal also submitted excerpts from Kieu's deposition testimony admitting she did not "believe [she] became a partner" with Quinal when purchasing the Camellia Court property. Kieu testified she gave real estate broker Loan (Lynn) Nguyen, who operated a company called Suncoast Mortgage, approximately $1.5 million so they could invest in various properties and split any profits. Kieu testified Nguyen informed her of the Camellia Court purchase, explaining Nguyen's friend Pham would be an equal partner with Kieu, and Pham would put the property in Quinal's name. Kieu believed Nguyen used $200,000 of the money Kieu had given her previously to purchase the Camellia Court property, but she no longer had the documents to support her belief. Nor did she have any idea how much Pham invested in the purchase of Camellia Court, but believed Pham was the person obligated to split any profits with her.

In August 2014, the trial court granted Quinal's summary judgment motion, finding the undisputed evidence demonstrated "neither [Kieu] nor [Quinal] understood there to be any partnership between them. [Kieu] states that she was only in a partnership with [] Nguyen. . . . She admits that she does not know [Quinal]; never had any agreement with her; and does not believe she and [Quinal] were ever partners. . . .

3

[Quinal's] declaration corroborates this by stating that she did not even know [Kieu] prior to this lawsuit, and never stated that she would be anyone's partner with respect to the property. . . . Thus, the evidence shows that there was no existing contract between the parties."

The trial court rejected Kieu's argument "the partnership was really between [Kieu] and [Quinal's mother Pham], and possibly also with [Loan (Lynn)] Nguyen" and that Quinal "acted as an agent for [] Pham and/or the partnership by agreeing to take title to the property in her name." The court concluded this was not "an allegation made in the" complaint, and "simply agreeing to put one's name on the title of the property does not imply that an agency relationship was created." The court also rejected Kieu's claim Quinal fraudulently promised to share the net proceeds from the sale of the house because no evidence showed Quinal or anyone acting on her behalf made any representations.

The court also denied Kieu leave to file a second amended complaint. As the trial court explained, the original and first amended complaints alleged Kieu and Quinal formed an oral partnership to purchase the Camellia Court property, but the proposed second amended complaint contradicted this allegation by claiming an oral partnership existed "between plaintiff, Cindy Pham, and Loan Nguyen, with [Quinal] acting as Pham's agent." The proposed second amended complaint "further alleges that the agreement was that *Pham and* [*Kieu*], not [Quinal] and [Kieu], would contribute the cash to purchase the property, and that they would split the profits 50/50." The court explained Kieu failed to show the earlier pleading was the result of mistake or inadvertence and allowing Kieu to file the second amended complaint one month before trial "would be prejudicial to [Quinal] because [the new allegations] completely change the factual landscape of the case," requiring "joinder of new parties" and new discovery.

4

II

DISCUSSION

A.      *Standard of Review for Summary Judgment*

"'"'The purpose of a summary judgment proceeding is to permit a party to show that material factual claims arising from the pleadings need not be tried because they are not in dispute."'"' (*Carlsen v. Koivumaki* (2014) 227 Cal.App.4th 879, 888 (*Carlsen*).)  "A defendant moving for summary judgment bears the initial burden to show the plaintiff's action has no merit.  [Citation.]  The defendant can meet that burden by either showing the plaintiff cannot establish one or more elements of his or her cause of action or there is a complete defense to the claim.  [Citations.]  To meet this burden, the defendant must present evidence sufficient to show he or she is entitled to judgment as a matter of law."  (*Id.* at p. 889.)

"Once the defendant meets that burden, the burden shifts to the plaintiff to present evidence establishing a triable issue exists on one or more material facts. . . .  'An issue of fact can only be created by a conflict of evidence.  It is not created by "speculation, conjecture, imagination or guess work."  [Citation.]  Further, an issue of fact is not raised by "cryptic, broadly phrased, and conclusory assertions" [citation], or mere possibilities [citation].  "Thus, while the court in determining a motion for summary judgment does not 'try' the case, the court is bound to consider the competency of the evidence presented."  [Citation.]'  [Citation.]  Responsive evidence that 'gives rise to no more than mere speculation' is not sufficient to establish a triable issue of material fact."  (*Carlsen*, *supra*, 227 Cal.App.4th at pp. 889-890.)

"'"'The function of the pleadings in a motion for summary judgment is to delimit the scope of the issues . . .'"' and to frame 'the outer measure of materiality in a summary judgment proceeding.' . . .  Accordingly, the burden of a defendant moving for summary judgment only requires that he or she negate plaintiff's theories of liability *as*

*alleged in the complaint*; that is, a moving party need not refute liability on some theoretical possibility not included in the pleadings. [Citations] [¶] Furthermore, "'''"[t]he [papers] filed in response to a defendant's motion for summary judgment may not create issues outside the pleadings and are not a substitute for an amendment to the pleadings."'''''" (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493; see *Nativi v. Deutsche Bank National Trust Co.* (2014) 223 Cal.App.4th 261, 290.)

"On an appeal from summary judgment, we review the record de novo. [Citation.] 'We need not defer to the trial court and are not bound by the reasons for [its] summary judgment ruling; we review the ruling of the trial court, not its rationale.'" (*Lattimore v. Dickey* (2015) 239 Cal.App.4th 959, 967.)

B.    *The Trial Court Properly Granted Summary Judgment*

      1.    Quinal Met Her Initial Burden by Presenting Evidence Showing No Partnership Agreement Existed and Evidence Showing She Made No Representations.

Kieu's operative complaint alleged Quinal breached the partnership agreement they formed to purchase the Camellia Court property and share equally any profits from its sale when Quinal sold the property and withheld the net proceeds. Kieu's second cause of action for intentional or negligent misrepresentation alleged that Quinal "[s]pecifically promised through Cindy Pham, [Quinal's] mother, that all net proceeds of the property's sale would be evenly distributed," but Quinal never intended to honor her promise and wrongfully converted the profits.

Quinal met her initial burden on both causes of action by presenting evidence no partnership agreement ever existed between her and Kieu, and she made no representations to Kieu either directly or through Pham. Specifically, Quinal in her declaration stated she put her name on title to the Camellia Court property at her mother's request, but never heard of Kieu until this lawsuit was filed, formed no partnership with her, and gave no one, including Pham, authorization to speak on her behalf. Quinal also

6

presented Kieu's deposition testimony admitting she did not believe Quinal was her partner in purchasing the Camellia Court property, and that she considered Pham the person obligated to share the sale proceeds with her.

C.    K*ieu Failed to Present Evidence Establishing a Triable Issue of Material Fact*

Kieu submitted her declaration in opposition to the motion. Kieu stated she entered into an oral partnership or joint venture agreement with Pham in "September-October 2011." They agreed to purchase Camellia Court, resell the property at a later date, and split the profits evenly. Kieu agreed to Pham's request to place title to the property in Quinal's name because Pham did not want to be of record as the property owner. All of the discussions concerning the partnership were conducted through Nguyen. They purchased the property for $358,900 in October 2011. Kieu contributed $148,625 and Pham contributed $200,000. Pham, as Kieu's partner, directed Quinal, with Kieu's consent, to act as purchaser of the property on the partnership's behalf. Quinal sold the property for $400,000 to a third party without notifying Kieu. Pham and Quinal did not give Kieu her share of the proceeds.

Kieu also submitted a declaration from Nguyen. As owner and principal of Suncoast Mortgage Company, Nguyen stated she personally organized the partnership to acquire the Camellia Court property. Nguyen claimed she specialized in negotiating and acquiring short sale properties, and structured the transactions as partnerships so investors would receive a prorated distribution of their invested proceeds. Pham brought the Camellia Court property to Nguyen's attention and sought assistance negotiating a short sale with the lender. Nguyen recommended Kieu as a potential partner. Later, Kieu and Pham orally advised her of their partnership agreement. According to Nguyen, Kieu and Pham "agreed that upon closing, the Property became a partnership asset." Pham wired Suncoast $200,000 for the purchase. Suncoast wired and contributed funds for the purchase, which "comprised [Kieu's] contributed funds which she had originally provided to Suncoast."

Nguyen asserted that after acquiring the property, Quinal collected rent of $28,000 from her control of the partnership, which she turned over to Pham. Pham told Nguyen she and Quinal collected rent to pay expenses "and refused to divide the rent with Pham [*sic* Kieu?]." Nguyen was not advised of the February 2013 sale of the property but discovered it when "reviewing title to the Property in early spring of 2013." Pham refused to respond to Nguyen's attempts to contact her. Nguyen asserted Quinal refused to distribute Kieu's share of the funds because Pham was in a dispute with Nguyen at the time concerning unpaid distributions from other partnership transactions not involving Kieu.

The foregoing evidence failed to show a triable issue of fact existed on whether a partnership or agreement existed between Kieu and Quinal. (See *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821 [elements of cause of action for breach of contract are existence of the contract, plaintiff's performance or excuse for nonperformance, defendant's breach, and resulting damages to the plaintiff].) There simply was no evidence Quinal agreed to associate with Kieu to carry on a business. Kieu admitted in her deposition she was not a partner with Quinal. Even if there was a triable issue of fact whether Quinal was Pham's agent in acquiring and selling the property (Civ. Code, § 2296), no evidence showed Quinal had knowledge of, acted on behalf of, or was an agent of a partnership between Pham and Kieu, or Nguyen, Kieu, and Pham concerning the property. There was no evidence Pham and Quinal ever discussed Kieu or the partnership. Quinal's sole involvement with the property was to allow her name to be on title, undertaken as a favor to her mother. She had nothing to do with funding the purchase and had no idea how her mother paid for the property. Nor did she receive any money or other consideration on the sale of the property.

As to the second cause of action for intentional or negligent misrepresentation, Quinal provided evidence she never made any representations concerning the property to Kieu or to anyone else, and never gave Pham authority to

make representations on her behalf. Kieu admitted she had never met Quinal and offered no evidence Quinal made representations personally, or via Pham or anyone else. She acknowledged she had no evidence Quinal was involved in the transaction beyond allowing her name to be used to hold title. Indeed, Kieu offered no evidence stating what specific statements were made, when, and by whom. Kieu also failed to provide facts demonstrating Quinal breached a duty of disclosure. The misrepresentation claim therefore fails. (*Small v. Fritz Companies, Inc*. (2003) 30 Cal.4th 167, 173, 184 [elements of fraud are misrepresentation (false representation, concealment, or nondisclosure), knowledge of falsity (scienter), intent to defraud/induce reliance, justifiable reliance, and resulting damage; fraud must be pleaded with specificity rather than with general conclusory allegations]; *West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 792 [negligent misrepresentation where defendant made the representation without reasonable ground for believing it to be true].)

D.     *The Trial Court Did Not Abuse Its Discretion in Denying Kieu's Request to Amend Her Complaint*

After Quinal filed her motion for summary judgment, Kieu filed a motion for leave to file a second amended complaint (Code Civ. Proc., § 473, subd. (a)(1)). She sought to "more specifically allege [] financial losses and to assert a third cause of action for breach of fiduciary duty and a fourth cause of action for conversion arising from the facts alleged." She asserted the "amended causes of action [were] predicated upon" Quinal's "factual admissions made during discovery" and clarified Kieu's legal claims. She noted she used the word "conversion" in her original form complaint fraud cause of action.

The proposed second amended complaint alleged Pham directed Quinal to act as purchaser on Pham's behalf as a partner of an existing partnership to purchase the property, the acquisition of the property was pursuant to an existing oral partnership/joint venture between Kieu, Pham, and Nguyen, Quinal knowingly acted as Pham's agent, and

9

Kieu ($148,625) and Pham ($200,000) each contributed cash to the purchase. It further alleged Nguyen and Pham were real estate brokers, and each was to receive a commission when the purchase closed. The property was a partnership asset. Kieu was to receive 50 percent of gross sale proceeds. Without notice to Kieu or her consent, Quinal conveyed the property to a third party for $400,000 at Pham's direction, as Pham's agent and on behalf of the partnership. Pham and Quinal misappropriated the proceeds, and failed to account for or distribute the proceeds to Kieu.

Kieu asserted Quinal would suffer no prejudice from the amendment because significant facts and documents were within Quinal's control and therefore she had actual or constructive knowledge of these matters. Kieu argued Quinal was the purchaser of the property, she had virtually all of the escrow purchase and closing documents in her possession, she knew Kieu did not receive her distribution from the sale, and she concealed the sale.

The court stated it was "puzzled as to how [Kieu] could have filed the complaint and [first amended complaint] against [Quinal] alone, all the while knowing (a) that she did not know and had never met [Quinal], and (b) that her partnership was with two other individuals not named as defendants." The court stated Kieu did not comply with California Rules of Court, rule 3.1324 because counsel failed to submit a declaration specifying when counsel discovered the facts giving rise to the amended allegations and why the amendment was not sought earlier. The court cited the rule disallowing an amendment contradicting allegations in a prior pleading unless sufficient evidence establishes the earlier pleading was the result of mistake or inadvertence. The court also concluded the proposed amendments would be prejudicial to Quinal because "they completely change the factual landscape of the case. Only one month remains before trial. The proposed amendments would require additional depositions, likely joinder of new parties, and differently targeted discovery."

10

Section 473, subdivision (a)(1), provides "The court may, in furtherance of justice, and on any terms as may be proper, allow a party to amend any pleading . . . ." (See Code Civ. Proc., § 576.) "The court may grant leave to amend the pleadings at any stage of the action. A party may discover the need to amend after all pleadings are completed (the case is 'at issue') and new information requires a change in the nature of the claims or defenses previously pleaded." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2015) ¶ 6:636, p. 6-177.)

"[J]udicial policy favors resolution of all disputed matters between the parties in the same lawsuit. [¶] Thus, the court's discretion will usually be exercised liberally to permit amendment of the pleadings." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2015) ¶ 6:638, p. 6-178.) "Courts are bound to apply a policy of great liberality in permitting amendments to the complaint 'at any stage of the proceedings, up to and including trial,' *absent prejudice to the adverse party.*" (Weil & Brown, *supra*, ¶ 6:652, p. 6-182; *Atkinson v. Elk Corp.* (2003) 109 Cal.App.4th 739, 761.) "If the party seeking the amendment has been dilatory, and the delay has *prejudiced* the opposing party, the judge has discretion to deny leave to amend." (Weil & Brown, *supra*, ¶ 6:655, p. 6-182.) "Prejudice exists where the amendment would require delaying the trial, resulting in loss of critical evidence or added costs of preparation, increased burden of discovery, etc." (Weil & Brown, *supra*, ¶ 6:656, p. 6-182.)

We discern no abuse of discretion in the trial court's decision to deny Kieu's motion to file a second amended complaint. The court correctly observed Kieu failed to explain the delay in seeking the amendment, and Kieu does not dispute this, other than to note she based the amendment on Quinal's discovery responses. The court also reasonably concluded Quinal would suffer prejudice from an amendment occurring one month before the scheduled trial because it would change the "factual landscape" of the case and require a new round of discovery, if not joinder of new parties.

11

Finally, the court noted Kieu's operative complaint alleged a partnership agreement between Kieu and Quinal to purchase the Camellia Court property, but the proposed amended complaint abandoned that claim and now based Quinal's involvement on the theory she was Pham's agent. The record supports the court's conclusion Kieu failed to offer an adequate explanation for the discrepancy.

## III

### DISPOSITION

The judgment is affirmed. No appellate costs are awarded.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.