Filed 5/13/25  Frabotta v. Chavez CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DEBBIE FRABOTTA,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>JUAN G. CHAVEZ,<br><br>Defendant and Respondent. | F088406<br><br>(Super. Ct. No. 22CECG02513)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Jeffrey Y. Hamilton, Jr., Judge.

Swanson O'Dell and Seth N. O'Dell for Plaintiff and Appellant.

Schaeffer Cota Rosen, James C. Schaeffer and Jennifer B. Saccomano for Defendant and Respondent.

-ooOoo-

Debbie Frabotta brought this wrongful death lawsuit against the hospital and doctors who treated her husband, Michael Frabotta, alleging their medical malpractice led to his death.[1]  Debbie appeals from a judgment entered in favor of one of her husband's

---

[1]  Because appellant and her husband share the same last name, we refer to them by their first names for ease of reference.  No disrespect is intended.

physicians, Juan G. Chavez, M.D. (Chavez), after the trial court granted Chavez's motion for summary judgment. The trial court found Debbie failed to meet her burden of raising a triable issue of material fact as to the standard of care and causation after excluding the declaration of Debbie's expert witness because the expert did not have sufficient experience and was unlicensed when the alleged malpractice occurred.

On appeal, Debbie argues her expert witness was qualified to provide an opinion about the applicable standard of care and the expert's declaration, if admitted, would have established a triable issue of fact as to whether Chavez deviated from the standard of care. We affirm the judgment, as Debbie failed to address the trial court's causation finding on appeal and, in any event, her expert's declaration is insufficient to raise a triable issue of fact on causation.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 29, 2021, Michael was transferred from the Fresno VA Medical Center (the VA) to Saint Agnes Medical Center (Saint Agnes) in Fresno, following an eight-day history of left lower extremity paresthesia and pain and coolness to the left foot. Medical imaging performed at the VA showed that Michael had a left lower extremity thrombus, or blood clot, with partial/complete occlusion. Michael was transferred to Saint Agnes to receive thrombolysis of this occlusion.

Michael arrived at Saint Agnes by ambulance at 4:28 p.m. and was seen by interventional radiologist Brian Boa-Yen Ng., M.D., who performed a catheter-directed thrombolysis that delivered tPA[2] directly into the thrombus. The catheter was to remain inserted for 24 hours to deliver tPA and an angiogram was planned for the next day to

---

[2]     tPA, an abbreviation for tissue plasminogen activator, is an anticlotting enzyme used to dissolve blood clots. (See Dictionary.com (2025)
<https://www.dictionary.com/browse/tpa> [as of May 13, 2025],
<https://www.dictionary.com/browse/tissue-plasminogen-activator> [as of May 13, 2025].)

determine if the clot had dissolved or passed. Ng ordered that Michael receive nothing by mouth (NPO) after midnight.

Michael was admitted to the intensive care unit (ICU), where Chavez was the attending physician. Chavez noted Ng's plan for continued tPA infusion. Chavez placed an order at 6:27 p.m. for Michael to have a meal, which did not contradict Ng's order. The records indicated that two dinner trays were delivered to Michael's room—one at 8:00 p.m. and the other at 10:00 p.m., but only the later meal was eaten.[3]

Early the next morning, Michael was taken for a CT of the abdomen/pelvis (CTAP) without contrast. When the CTAP was completed and as Michael was being rolled out of the scanner, he went into "PEA arrest and started bleeding massively from his mouth with copious thick blood clots." Resuscitation efforts were unsuccessful, and Michael was pronounced dead at 7:08 a.m. The results of the CT scan did not show a retroperitoneal bleed or a source of the bleed, although Michael was noted to have blood in his stomach.

An autopsy was performed. The significant findings included extensive aspiration of food particles and foreign materials in the lungs, and moderately extensive visceral bleeding, mostly in the gastrointestinal tract and lungs. Autopsy organ examination demonstrated a moderate amount of bloody fluids in the stomach along with several clusters of blood clots. The small bowel and large intestines were noted to be modestly dilated with bloody fluids and blood clots. The report stated the direct cause of death was unclear but contributing causes could include aspiration, arterial atherosclerosis with peripheral vascular disease, and bleeding disorder.

---

[3]     Other medical personnel provided care to Michael during the overnight shift on June 29 and 30. Their actions are irrelevant to this motion.

### This Lawsuit

Debbie brought this lawsuit against Saint Agnes, Chavez and the other physicians who cared for Michael in August 2022. Although Debbie's complaint and Chavez's answer are not in the appellate record, the parties agree that the only cause of action alleged against Chavez is one for medical malpractice.

### Chavez's Summary Judgment Motion

In March 2024, Chavez moved for summary judgment on the grounds that he met the standard of care in his treatment of Michael and his actions or inactions did not cause Michael's death. In support of the motion, Chavez submitted the declaration of Roy Artal, M.D., a pulmonary medicine and critical care physician who was board certified in internal medicine by the American Board of Internal Medicine. Artal also was board certified in critical care medicine between 2002 and 2012.

Artal opined that Chavez met the standard of care in his treatment of Michael and nothing he did or did not do caused Michael's death. Artal opined that Chavez's order that Michael receive a meal did not violate the standard of care, as it complied with Ng's NPO order and there was no contraindication to taking in food orally for patients on IV tPA. Artal further opined that to a reasonable degree of medical certainty, the presence of food particles in Michael's lungs was not a substantial factor in causing his death, as his cause of death was a massive gastrointestinal bleed, not aspiration of food particles.

### The Opposition to the Summary Judgment Motion

In opposition to the summary judgment motion, Debbie argued Chavez failed to meet the standard of care in his treatment of Michael, which contributed to Michael's death. In support of her opposition, Debbie submitted the declaration of Ty Tran, M.D., an emergency medicine physician. Tran graduated from medical school in May 2019, obtained his physician and surgeon license from the Medical Board of California in June 2022, and completed his residency in emergency medicine at Kern Medical Center in June 2023. In November 2023, Tran passed his qualifying exam for the American

4.

Board of Emergency Medicine and was eligible for the oral exams to be administered in 2024. Tran declared that based on his education, experience, and training as an emergency medicine physician, he was familiar with the standard of care for critical care physicians in the community and was qualified to render expert opinions in this matter.

Tran stated he was asked to assess whether Chavez complied with the standard of care in his treatment of Michael. Tran reviewed Michael's medical records from Saint Agnes. He asserted that after Michael was admitted to the ICU, Chavez examined Michael, who complained of "5/10 pain" localized on top of the left foot. A nurse updated Chavez at 9:00 p.m. that Michael was complaining of "pain 9/10 left lower extremity," who advised the nurse to contact Ng. Chavez noted Michael was critically ill and made an entry at 9:40 p.m. that the "TOTAL CRITICAL CARE TIME caring for this patient with life-threatening, unstable organ failure, including direct patient contact, management of life support systems, review of data including imaging and labs, and discussion with other team members and physicians was 40 minutes."

Tran noted that Michael received glucocorticoid therapy at both Saint Agnes and the VA to counteract his IV contrast agent allergy. Tran explained the total amount of solumedrol Michael received at both locations was "equivalent to 312.5 mg of hydrocortisone," which was "well above the definition of 'high dose steroids' often cited as 250 mg of hydrocortisone." Chavez's ICU consultation note, however, did not indicate he ordered gastrointestinal (GI) prophylaxis.

Based on the records, Tran opined that Chavez's failure to place Michael on GI prophylaxis or call for its consideration with the emergence of any symptomatology was below the standard of care. Tran explained the development of stress ulcers in the intensive care unit setting is well-documented in the medical literature and associated with increased mortality. Patients with risk factors include those with coagulopathies, who have three or more coexisting diseases, who are on antiplatelet agents, or who are in shock. Tran asserted that Michael had all of these factors "[t]o an extent," and

5.

coagulopathy such as overt bleeding with hemodynamic changes alone would warrant placing Michael on GI prophylaxis, which Chavez should have done "or at least called for its consideration, which he did not." Tran further opined the use of GI prophylaxis "would have had the effect of possibly preventing and more likely minimizing the effects of a gastrointestinal bleed," which was Michael's likely cause of death.

***Chavez's Reply***

In reply, Chavez argued Tran's declaration was insufficient to show he breached the standard of care applicable at the time of Michael's treatment or that his actions were a substantial factor in causing Michael's death, while Chavez provided competent medical testimony which established he met the applicable standard of care and did not cause Michael's death.

Chavez submitted written evidentiary objections to Tran's declaration in which he objected to the entire declaration on the grounds it lacked foundation, was conclusory and speculative, provided no reasonable explanation for the opinions offered, and lacked the requisite practical knowledge, training, or skill to render a standard of care opinion. Chavez also objected to specific paragraphs of the declaration on essentially the same grounds. Chavez argued Tran could not offer standard of care opinions concerning a critical care physician in a critical care unit, as Tran completed his residency in emergency medicine in June 2023, he exclusively practiced emergency medicine, and he never practiced medicine as an attending physician in any critical care department.

Chavez alternatively argued that even if the court accepted Tran as a qualified expert, his declaration did not create a triable issue of fact because he did not support his opinions with any facts or reasoned explanations. Chavez pointed to the following examples: (1) Tran stated Michael developed stress ulcers in the ICU setting but failed to provide any evidence that he developed them, as the autopsy report did not note that such ulcers were found, and ulcers were not diagnosed when Michael was admitted to the critical care unit; and (2) Tran's statement that Michael had all the risk factors for a stress

6.

ulcer "[t]o an extent," was vague as to what factors Michael had and how they caused him to develop stress ulcers.

Finally, Chavez asserted that while Tran stated it was below the standard of care for Chavez not to place Michael on GI prophylaxis, Tran failed to explain what GI prophylaxis was and how that would have prevented Michael's death. Chavez argued Tran's statement that GI prophylaxis " 'would have had the effect of *possibly* preventing and more likely minimizing the effects of gastrointestinal bleed' " was insufficient to establish a causal connection between the negligent conduct and injury, as Tran failed to state that if Chavez ordered the GI prophylaxis, it would have, to a reasonable degree of medical certainty, prevented Michael's death, not just minimized the bleed.

### *The Trial Court's Ruling*

A hearing on Chavez's motion was held on June 6, 2024. After argument, the trial court took the matter under advisement and ultimately issued an order adopting its tentative ruling granting the motion. The trial court found Artal's declaration was sufficient to shift the burden regarding the standard of care and causation. The trial court stated Debbie's opposition relied on Tran's declaration to dispute Chavez met the standard of care and his actions or failure to act caused Michael's death. The trial court summarized Tran's opinions—that Chavez's failure to place Michael on GI prophylaxis or call for its consideration was below the standard of care and the use of the prophylaxis would have possibly prevented and more likely minimized the effects of a gastrointestinal bleed, which was the likely cause of Michael's death. The trial court noted Tran did not offer any direct opinions as to causation within a reasonable degree of medical certainty.

The trial court sustained Chavez's objections to Tran's declaration in its entirety as lacking foundation, conclusory, and speculative. The trial court explained that Tran practiced exclusively in emergency medicine and completed his residency in emergency medicine in June 2023, but he had not practiced as an attending physician in a critical care department and lacked the requisite experience to render an opinion on the standard

7.

of care for such a physician.  Moreover, Tran was not licensed to practice medicine at the time of the events giving rise to the lawsuit.

Accordingly, the trial court found Debbie had not met her burden of raising a triable issue of material fact as to both whether Chavez met the standard of care and as to causation due to his failure to order GI prophylaxis.  As a result, the trial court granted the summary judgment motion.  Judgment was entered in Chavez's favor on June 14, 2024.

## DISCUSSION

### I.        Standard of Review

Summary judgment is proper only if there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subds. (c), (f).)  As a moving defendant, Chavez had the initial burden of showing the wrongful death claim based on medical malpractice was without merit by showing one or more elements cannot be established.  (§ 437c, subd. (p)(2).)  Once Chavez met his initial burden, the burden shifted to Debbie to produce evidence demonstrating the existence of a triable issue of material fact.  (*Ibid.*; *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.)  If Debbie was unable to do so, Chavez was entitled to summary judgment as a matter of law and the motion was properly granted.  (*Kincaid v. Kincaid* (2011) 197 Cal.App.4th 75, 82.)

On appeal, our task is to independently determine whether a triable issue of material fact exists and whether the moving party is entitled to summary judgment as a matter of law.  (*Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1601.)  Although summary judgment rulings are reviewed de novo, we review the trial court's evidentiary rulings for abuse of discretion.  (*Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 122; *Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1169.)

## II.    Medical Malpractice

"Medical providers must exercise that degree of skill, knowledge, and care ordinarily possessed and exercised by members of their profession under similar circumstances." (*Powell v. Kleinman*, *supra*, 151 Cal.App.4th at p. 122.) "Thus, in ' "any medical malpractice action, the plaintiff must establish: '(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence.' " ' " (*Ibid.*, citing *Hanson v. Grode* (1999) 76 Cal.App.4th 601, 606.)

Here, Chavez moved for summary judgment on the grounds that Debbie could not establish that he breached the duty of care or caused Michael's death. The trial court concluded that Chavez satisfied his initial burden of production on these issues, which Debbie does not challenge on appeal. Thus, the burden shifted to Debbie to raise a triable issue of material fact. Debbie attempted to do this by presenting Tran's declaration, who opined Chavez breached the standard of care by failing to place Michael on GI prophylaxis or call for its consideration, and the use of GI prophylaxis would have had the effect of possibly preventing and more likely minimizing the effects of a gastrointestinal bleed which was the likely cause of Michael's death.

The trial court sustained Chavez's evidentiary objections and excluded Tran's declaration, finding he lacked the experience to render an opinion on the standard of care for a critical care physician and was not licensed to practice medicine at the time of the alleged malpractice. The trial court further noted Tran did not offer any direct opinion as to causation within a reasonable degree of medical certainty. Consequently, the trial court found Debbie had not met her burden of raising a triable issue of material fact as to whether Chavez met the standard of care and as to causation.

9.

On appeal, Debbie focuses on the trial court's exclusion of Tran's declaration, arguing he is qualified to render an opinion as an expert as to whether Chavez deviated from the standard of care, and contends his declaration raises a triable issue of fact on whether Chavez breached the standard of care. Debbie, however, does not address in her opening brief Chavez's other ground for summary judgment—that his actions or inactions did not cause Michael's death.

Chavez argues Debbie's failure to address the issue of causation in her opening brief forfeits any claim of error on appeal. (See *Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125 [appellant's failure to discuss issue of causation in his opening brief, which was one of the grounds the respondent sought summary judgment on and on which the trial court granted summary judgment, forfeited the issue on appeal].) "When a trial court states multiple grounds for its ruling and appellant addresses only some of them, we need not address appellant's arguments because 'one good reason is sufficient to sustain the order from which the appeal was taken.'" (*People v. JTH Tax, Inc.* (2013) 212 Cal.App.4th 1219, 1237, quoting *Sutter Health Uninsured Pricing Cases* (2009) 171 Cal.App.4th 495, 513.) Accordingly, we need not consider the merits of the trial court's exclusion of Trans's declaration or its findings that Debbie failed to raise triable issues of material fact on the issues of the standard of care and causation.

Even if we were to consider the issue of causation, however, we agree with Chavez that Debbie did not meet her burden of demonstrating a triable issue of material fact. "[O]ne of the essential elements of a cause of action for medical malpractice is 'a proximate causal connection between the negligent conduct and the injury.'" (*Lattimore v. Dickey* (2015) 239 Cal.App.4th 959, 970.) " 'The law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony. Mere possibility alone is insufficient to establish a prima facie case.'" (*Ibid.*, citing *Jones v. Ortho Pharmaceutical Corp.* (1985)

163 Cal.App.3d 396, 402; accord, *Morgenroth v. Pacific Medical Center, Inc.* (1976) 54 Cal.App.3d 521, 532, 533 [" 'plaintiff in a malpractice case must prove that defendant's negligence, *in probability,* proximately caused death' "; probability standard not met where expert's declaration stated that the plaintiff's stroke was more probably a complication of the procedure at issue than a coincidence and the length of time of the diagnostic procedures was a factor that increased the risk of " 'something bad' " happening].)

Debbie contends Tran's declaration was sufficient to demonstrate causation. She asserts Tran opined that Chavez should have placed Michael on GI prophylaxis or at least considered it, "and with such omission, [Michael] continued to bleed until he died because of the gastrointestinal bleeding." She further asserts Tran opined Chavez's omission "more likely than not, caused [Michael]'s continuance of bleeding, which connected to the death." Debbie argues this shows Tran demonstrated the proximate causal connection between Chavez's omission and Michael's death.

Debbie, however, mischaracterizes Tran's declaration, which showed only that it was a possibility, not a reasonable medical probability, that Michael's death was caused by Chavez's failure to order GI prophylaxis. Tran did not opine, as Debbie asserts, that without GI prophylaxis Michael continued to bleed until he died or Chavez's omission more likely than not caused Michael to continue to bleed, which led to his death. Instead, Tran declared only that the use of GI prophylaxis "would have had the effect of *possibly* preventing and *more likely* minimizing the effects of a gastrointestinal bleed" and "[a] massive gastrointestinal bleed was the likely cause of death of the decedent." (Emphasis added.)

A possibility of prevention or likelihood of minimization does not amount to a reasonable medical probability. "A possible cause only becomes 'probable' when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action." (*Jones v. Ortho Pharmaceutical Corp.*, *supra*,

11.

163 Cal.App.3d at p. 403.) While Tran did state a massive gastrointestinal bleed likely caused Michael's death, Tran never linked the failure to provide GI prophylaxis to the cause of Michael's death. He did not state that if Chavez ordered GI prophylaxis it would have, to a reasonable degree of medical certainty or more likely than not or probably, prevented Michael's death.

Tran's declaration therefore was insufficient to raise a triable issue of material fact on the element of causation. Given our conclusions that Debbie's failure to address the issue of causation resulted in a forfeiture of that issue and, in any event, Debbie failed to meet her burden of raising a triable issue of material fact as to causation, it is unnecessary to address whether Tran's declaration was admissible and the declaration raised a triable issue of material fact on whether Chavez breached the standard of care.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent.


                                                    DE SANTOS, J.
WE CONCUR:


HILL, P. J.


PEÑA, J.


12.