Filed 4/1/22  Prasad v. Mercy Medical Center etc. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

|  |  |
|---|---|
| VIRENDRA PRASAD, | C093599 |
| Plaintiff and Appellant, | (Super. Ct. No. 20CVPO0194257) |
| v. | |
| MERCY MEDICAL CENTER REDDING/DIGNITY HEALTH, | |
| Defendant and Respondent. | |

Plaintiff Virendra Prasad brought this medical negligence action against defendant Mercy Medical Center Redding/Dignity Health after he suffered traumatic head injuries from a fall.  Plaintiff claims he was harmed as a result of the negligent care rendered by defendant's employees.  The trial court granted summary judgment in favor of defendant, finding that plaintiff had failed to establish a triable issue of fact on his medical negligence claim.  This timely appeal followed.  We conclude the motion for summary judgment was properly granted and affirm the resulting judgment.

1

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2016, plaintiff lived in the town of Weed in Shasta County. He was 57 years old. On the evening of December 23, 2016, he fell at home after consuming a significant amount of alcohol. His ex-wife and son found him unconscious on the kitchen floor. He was taken by ambulance to the emergency department of Mercy Medical Center Mount Shasta and arrived there shortly before midnight.

The emergency room doctor determined that plaintiff was suffering from confusion, alcohol intoxication, drug abuse, and/or intracranial hemorrhage. He was struggling to breathe and was intubated. A computed tomography (CT) scan revealed that he had an intracranial hemorrhage and skull fractures. A CT angiogram of his head and neck was performed, but there was no evidence of an intracranial aneurysm, stenosis, or dissection.

Due to the seriousness of his injuries, plaintiff was transferred to Mercy Medical Center Redding, where he arrived around 3:00 a.m. on December 24. He was non-responsive and admitted to the intensive care unit (ICU), where a critical care specialist determined that he was severely obtunded/comatose and was experiencing acute respiratory failure. The specialist placed an arterial line for monitoring purposes, including intracranial pressure, and noted that a neurosurgeon would be examining him. Later that same day, a neurosurgeon performed a right ventriculostomy on plaintiff's skull and brain to relieve intracranial pressure. Thereafter, plaintiff's condition mildly improved; he was able to intermittingly follow voice commands, although he could not move.

On December 27, plaintiff was able to open his eyes and consistently look upward in response to voice commands. On December 28, his ex-wife consented to a procedure known as a tracheostomy and PEG (percutaneous endoscopic gastrostomy) tube placement, which involved the insertion of breathing and feeding tubes. However, she

2

withdrew her consent the following day after having second thoughts about prolonging plaintiff's life via long-term life support and rehabilitation.[1]

On December 30, plaintiff's mental status began to decline. The decline continued the next day; he was no longer able open his eyes in response to verbal commands. When plaintiff's ex-wife and son met with a doctor to discuss his declining mental status and poor prognosis, they made it clear that plaintiff would not want to live under conditions in which he was highly dependent upon life support and requested that his current supportive care be continued, and his code status was changed to DNR (i.e., do not resuscitate).

During the first week of January 2017, plaintiff's condition did not materially change; he remained critically injured and in a coma and was dependent upon mechanical ventilation to breathe; however, he was able to move his eyes in response to questions and voice commands. On January 8, plaintiff was able to respond to questions by moving his eyes and was able to move his head slightly during questioning. On January 10, he was "spontaneously awake" and responded to voice commands by blinking his eyes.

On January 15, plaintiff became "much more lucid" and was able to move his toes in response to voice commands. The next day, he was lucid and able to move his head up and down and left and right. In response to questioning, he denied experiencing any pain or anxiety. On January 17, he remained lucid and was able to understand the treatment options explained to him and affirm that he wanted to proceed with tracheostomy/PEG placement. On January 19, the tracheostomy/PEG placement procedure was performed without complication. That same day, plaintiff was stable and transferred to Vibra

---

[1] Plaintiff's treating physicians initially believed his ex-wife was his wife. However, on January 16, 2017, they learned that she was actually his ex-wife. Thereafter, plaintiff's son became the person on whom the treating physicians relied for decisions about plaintiff's medical treatment.

3

Rehabilitation. At some point thereafter, he was removed from life support devices and discharged from Vibra.

Plaintiff's medical records indicate that he sustained a traumatic "closed head injury" and was in a coma for several weeks. He was critically ill with a condition called "locked-in syndrome" after suffering a hemorrhagic left cerebellar stroke. Locked-in syndrome is a rare condition caused by damage to an area of the brain stem, which results in complete paralysis, except for occasional ocular (i.e., eye) movement. It is extremely rare for a person with the syndrome to recover; typically, the person remains in a paralyzed state until they pass away.

In January 2020, plaintiff brought suit against defendant. A first amended complaint was filed in May 2020. It alleged one cause of action for medical negligence, which was predicated on defendant's failure to monitor or make any attempt to revive plaintiff, its decision to change his status to DNR, its misdiagnoses of his recovery, and its attempt to persuade his family to terminate life support.

In July 2020, defendant filed a motion for summary judgment, arguing that it had not breached the applicable standard of care and did not cause or contribute to any of plaintiff's injuries. In support of its motion, defendant submitted an expert declaration from John Luce, M.D., who opined that, based on his review of plaintiff's medical records, defendant met or exceeded the standard of care in treating plaintiff and there was no evidence of substandard care. Dr. Luce also opined that, to a reasonable degree of medical probability (i.e., greater than 50 percent), there was no act or omission on the part of defendant that caused or contributed to plaintiff's injuries. Dr. Luce's curriculum vitae and plaintiff's medical records were attached as exhibits to Dr. Luce's declaration.

Plaintiff opposed the motion. He argued that summary judgment was not warranted because, although Dr. Luce was "well-qualified as to the standard of care," he was not a competent declarant under the summary judgment statute (Code Civ. Proc.,

4

§ 437c, subd. (d)),[2] since he had no personal knowledge of plaintiff's medical care and simply relied on plaintiff's medical records in forming his opinions.[3]  Plaintiff also argued that Dr. Luce's declaration was inadmissible under *People v. Sanchez* (2016) 63 Cal.4th 665, 684 ("If an expert testifies to case-specific out-of-court statements to explain the bases for his opinion, those statements are necessarily considered by the jury for their truth, thus rendering them hearsay").  Lastly, plaintiff argued that the "common knowledge" exception applied, such that expert evidence was not required for the finder of fact to determine whether defendant breached the standard of care.  (See *Lattimore v. Dickey* (2015) 239 Cal.App.4th 959, 968 [the standard of care in a medical negligence case can only be proved by expert evidence, "unless the circumstances are such that the required conduct is within the layperson's common knowledge"]; *Massey v. Mercy Medical Center Redding* (2009) 180 Cal.App.4th 690, 695 (*Massey*) [expert evidence is required to prove that a medical professional did not meet the standard of care and therefore was negligent, " 'except in cases where the negligence is obvious to [laypersons]' "]; *id*. at pp. 694-695.)

Plaintiff's theory was that, although he received "excellent treatment and care for his skull and brain injury," there was a triable issue of fact as to whether the standard of care had been met because the evidence showed "there was no revival, no recovery, just palliative care, and pressure on surrogate family members to terminate [his] life support so he would die."  In support of his theory, he submitted declarations from his ex-wife and son, but no other evidence.

---

[2]  Further undesignated statutory references are to the Code of Civil Procedure.

[3]  Section 437c, subdivision (d) provides, in pertinent part:  "Supporting and opposing affidavits or declarations shall be made by a person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavits or declarations."

In October 2020, the trial court granted summary judgment in favor of defendant.[4] In doing so, the court rejected plaintiff's challenges to Dr. Luce's declaration. The court ruled that Dr. Luce's medical opinions were not inadmissible due to a lack of personal knowledge, explaining that a medical expert can rely on a patient's medical records in offering opinions in a medical negligence case. The court further ruled that Dr. Luce's declaration was not inadmissible under *Sanchez*, explaining that medical experts may rely on hearsay statements in a patient's medical records in forming their opinions, as long as a hearsay exception applies or that same information is placed before the court in some other manner.

As for the merits, the trial court concluded that Dr. Luce's declaration was sufficient to shift the burden to plaintiff to establish a triable issue of fact as to whether the standard of care had been met, and that plaintiff failed to satisfy his burden because he did not submit any expert evidence. The court rejected plaintiff's contention that expert evidence was unnecessary because the common knowledge exception applied, and explained: "[T]his situation does not present obvious conduct in which a layman can point to as negligent. The proper diagnosis, assessment, treatment, or rendering of a treatment plan for a serious brain injury are not within the common knowledge of a layperson." The court further explained: "While it appears plaintiff contends that the [d]efendant['s] medical professionals were . . . mistaken as to [his] chances of survival, [he] has failed to present any evidence that defendant failed to meet the standard of care related to the medical care provided at defendant's hospital . . . ." Finally, the court found that, even if plaintiff had shown a triable issue of fact as to whether the standard of care had been met, he failed to show the existence of a triable issue of fact as to causation

---

**4** None of the trial court's evidentiary rulings with regard to the declarations submitted by plaintiff are challenged on appeal.

and noted that the evidence submitted by plaintiff was "wholly inadequate" to show he suffered any harm from defendant's alleged breach of the standard of care.

In January 2021, plaintiff filed what we shall deem a motion for reconsideration, asking the trial court to set aside its summary judgment order.[5]  Plaintiff argued that such relief was warranted because defendant failed to make Dr. Luce available for deposition prior to moving for summary judgment in violation of the expert witness discovery statutes (§ 2034.210 et seq.).  Plaintiff insisted that it was improper for defendant to rely on Dr. Luce's declaration under these circumstances.  The appellate record does not disclose whether the trial court ruled on the motion, but judgment was entered in favor of defendant the day after the motion was filed.

Plaintiff timely filed a notice of appeal.  The case was fully briefed on September 21, 2021.  On November 16, 2021, we sent an oral argument waiver notice to the parties.  Plaintiff requested argument, and after a continuance of argument granted to plaintiff, argument was heard on March 22, 2022.

## DISCUSSION

### I

*Standard of Review*

"Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion.  [Citation.]  ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." '  [Citation.]  We liberally construe the

---

[5]  Although the document plaintiff filed was not designated as a motion for reconsideration, we treat it as such based on the relief requested.  (See *Powell v. County of Orange* (2011) 197 Cal.App.4th 1573, 1577 [name of a motion is not controlling, and a motion asking the trial court to decide the same matter previously ruled on is a motion for reconsideration]; *J.W. v. Watchtower Bible & Tract Society of New York, Inc.* (2018) 29 Cal.App.5th 1142, 1171 [same].)

evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.) "In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment." (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 925.)

A defendant moving for summary judgment has the burden of showing that a cause of action has no merit by demonstrating one or more elements of the cause of action cannot be established or that a complete defense to that cause of action exists. (§ 437c, subd. (p)(2).) If the defendant successfully meets this burden, the plaintiff then has the burden of setting forth specific facts showing the existence of one or more triable issues of material fact. (*Ibid.*) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the [plaintiff] . . . in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fn. omitted.) The trial court shall grant the defendant's summary judgment motion if there is no triable issue as to any material fact and that party is entitled to judgment as a matter of law. (§ 437c, subd. (c).)

II

*Motion for Reconsideration*

Plaintiff contends reversal is required because defendant failed to make Dr. Luce available for deposition prior to moving for summary judgment in violation of the expert witness discovery statutes (§ 2034.210 et seq.). Because this argument was raised for the first time in plaintiff's motion for reconsideration, we construe the appellate claim to contend the trial court erred in failing to grant the motion. We disagree.

When, as here, a party files a motion for reconsideration of a ruling on a summary judgment motion, the trial court may not grant the motion unless the requirements of section 1008 have been satisfied. (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1108.) Section 1008, subdivision (a), provides, in pertinent part: "[A]ny party affected by [a

8

court] order may, within 10 days after service upon the party of written notice of entry of the order and based upon new or different facts, circumstances, or law, make application to the same judge or court that made the order, to reconsider the matter and modify, amend, or revoke the prior order.  The party making the application shall state by affidavit what application was made before, when and to what judge, what order or decisions were made, and what new or different facts, circumstances, or law are claimed to be shown."  A party seeking reconsideration also must satisfactorily explain the failure to present the new or different information earlier.  (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 839.)  If these prerequisites are not satisfied, a trial court acts in excess of its jurisdiction in granting a motion for reconsideration.  (*Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 690-691; *G.R. v. Intelligator* (2010) 185 Cal.App.4th 606, 622.)

We see no error in the trial court's failure to grant reconsideration.  Plaintiff's motion for reconsideration was not supported by an affidavit or declaration, was filed 77 days after summary judgment was granted, and does not articulate any new or different facts, circumstances, or law for the trial court's consideration.  Indeed, the facts and circumstances giving rise to the legal argument raised in plaintiff's motion--the expert's availability for deposition--were not new or different because these facts were known to plaintiff before he filed his opposition to the motion for summary judgment. (*In re Marriage of Herr* (2009) 174 Cal.App.4th 1463, 1468 ["facts of which the party seeking reconsideration was aware at the time of the original ruling are not 'new or different' "].)  In his September 2020 settlement conference statement, which was filed several weeks before his opposition to the motion for summary judgment, plaintiff stated: "[T]he motion for summary judgment will be opposed.  Among other reasons, the designation of experts under CCP §§2034.210-2034.310 applies to the Declaration of John M. Luce, M.D.[] and his declaration is objected to pursuant to CCP 437c(c) and cannot be used to support the summary judgment motion."  Thus, it is readily apparent

9

from the record that plaintiff could have raised the argument he made in his motion for reconsideration earlier. He offered no explanation for his failure to do so. Under these circumstances, the trial court properly refused to grant reconsideration. (See *Cox v. Bonni* (2018) 30 Cal.App.5th 287, 312 ["A trial court may not grant a party's motion for reconsideration that does not comply with section 1008"].)

In any event, the substantive legal argument made by plaintiff in his motion for reconsideration is utterly without merit. Plaintiff has not cited, and we are not aware of, any authority supporting the conclusion that defendant was required to make Dr. Luce available for deposition prior to moving for summary judgment. Due to the timing requirements of the expert witness discovery statutes and the summary judgment statute, a summary judgment motion will normally be heard and determined *before* the exchange of expert witness information. (See *Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 539-540.) Ordinarily, expert depositions are not taken until after the exchange of expert witness information (§§ 2034.210, 2034.410), which did not take place in this case before defendant moved for summary judgment.[6] Although "where a party presents evidence that raises a significant question relating to the foundation of an expert's opinion filed in support of or in opposition to a motion for summary judgment or summary adjudication, a deposition limited to that subject should be allowed" (*St. Mary Medical Center v. Superior Court* (1996) 50 Cal.App.4th 1531, 1534), plaintiff did not raise any significant or legitimate questions concerning the foundation of Dr. Luce's medical opinions in the trial court. To the contrary, plaintiff conceded that Dr. Luce was "well qualified" to render an opinion as to whether the standard of care had been met, and that Dr. Luce had relied on his medical records in rendering an opinion on that issue. Further, the record does not reflect that plaintiff requested a continuance for the purpose

---

[6] It is not disputed that the deadline for the exchange of expert witness information was October 19, 2020, which was the same day as the hearing on defendant's motion for summary judgment.

10

of deposing Dr. Luce. (See § 437c, subd. (h) [authorizing a continuance of summary judgment proceedings to allow discovery to be conducted].) Instead, plaintiff objected to Dr. Luce's declaration on the ground that it was improper for him to offer expert medical opinions based solely on his review of medical records, arguing that Dr. Luce's declaration was inadmissible because he had no personal knowledge of the underlying facts on which he based his medical opinions (i.e., personal knowledge of the medical care plaintiff received), and because he improperly relied on hearsay statements in forming his opinions. The trial court properly rejected these arguments.

To provide an expert opinion, a person must have sufficient "special knowledge, skill, experience, training, or education." (Evid. Code, § 720, subd. (a).) "An expert may rely on otherwise inadmissible hearsay evidence provided the evidence is reliable and of the type that experts in the field reasonably rely upon in forming their opinions." (*People v. Yuksel* (2012) 207 Cal.App.4th 850, 856.) Medical records, although hearsay, can be used as a basis for an expert medical opinion in a medical negligence case. (*Garibay v. Hemmat* (2008) 161 Cal.App.4th 735, 743; *Wicks v. Antelope Valley Healthcare Dist.* (2020) 49 Cal.App.5th 866, 876 [medical records "are the type of records on which medical experts may and do rely in order to give expert testimony in a medical malpractice case"].) In *Garibay*, the court reversed a summary judgment order entered in favor of the defendant doctor in a medical malpractice action, finding the expert declaration in support of the doctor's motion lacked foundation. Defendant's medical expert had not demonstrated personal knowledge of the underlying facts on which he based his opinion because his declaration "attempted to testify to facts derived from medical and hospital records which were not properly before the court." (*Garibay*, at p. 743.) The moving papers did not include authenticated copies of the medical records on which the expert based his opinion. (*Ibid.*) Here, by contrast, the medical records Dr. Luce reviewed and on which he based his medical opinions were

11

authenticated and properly before the court.  Therefore, his declaration was not inadmissible on the grounds raised by plaintiff.  (See *Wicks*, at p. 876.)

III

*Medical Negligence*

Plaintiff contends the trial court erred in determining that his medical negligence cause of action could not be established without expert medical evidence.  He argues that summary judgment should have been denied because the common knowledge exception applies, since defendant's negligence concerning plaintiff's medical treatment falls within the common knowledge of laypersons.  We disagree.

"Generally, 'negligence' is the failure to exercise the care a reasonable person would exercise under the circumstances.  [Citation.]  Medical negligence is one type of negligence, to which general negligence principles apply." (*Massey, supra,* 180 Cal.App.4th at p. 694.)  The elements of a cause of action for medical negligence are: " '(1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage.' " (*Lattimore v. Dickey, supra*, 239 Cal.App.4th at p. 968.)

" 'Ordinarily, the standard of care required of a doctor, and whether he exercised such care, can be established only by the testimony of experts in the field.'  [Citation.] 'But to that rule there is an exception that is as well settled as the rule itself, and that is where "negligence on the part of a doctor is demonstrated by facts which can be evaluated by resort to common knowledge, expert testimony is not required since scientific enlightenment is not essential for the determination of an obvious fact." ' " (*Gannon v. Elliot* (1993) 19 Cal.App.4th 1, 6.)  "The 'common knowledge' exception is principally limited to situations in which the plaintiff can invoke the doctrine of res ipsa loquitur, i.e., when a layperson 'is able to say as a matter of common knowledge and observation that the consequences of professional treatment were not such as ordinarily

12

would have followed if due care had been exercised.' " (*Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 1001, fn. omitted.)

The classic example of a case that falls within the common knowledge exception is one in which a foreign object has been left in the patient's body. (See, e.g., *Ales v. Ryan* (1936) 8 Cal.2d 82, 95-99 [sponge left in abdominal cavity]; *Leonard v. Watsonville Community Hospital* (1956) 47 Cal.2d 509, 514 [clamp left in abdomen].) Other examples include cases in which the patient "received an injury to a part of the body unrelated to the part being treated," such as the amputation of the wrong limb or a shoulder injury during an appendectomy. (*Hurn v. Woods* (1982) 132 Cal.App.3d 896, 901 [collecting cases]; see *Ewing v. Northridge Hospital Medical Center* (2004) 120 Cal.App.4th 1289, 1303 [collecting cases].)

"California decisions state that the common knowledge exception applies if the medical facts are commonly susceptible of comprehension by a lay juror—that is, if the jury is capable of appreciating and evaluating the significance of a particular medical event. [Citations.] As our high court has succinctly put it: 'Technical knowledge is not requisite to conclude that complications from . . . a surgical clamp left in the patient's body . . . indicate negligence. Common sense is enough to make that evaluation.' " (*Gannon v. Elliot*, *supra*, 19 Cal.App.4th at p. 7.)

We conclude the trial court correctly determined that the common knowledge exception does not apply. The record reflects that plaintiff suffered traumatic head injuries from a fall and was in a coma for several weeks in defendant's ICU. He was critically ill with locked-in syndrome, a rare condition caused by damage to an area of the brain stem, which results in complete paralysis, except for occasional eye movement. In his declaration, Dr. Luce stated that he was familiar with the syndrome and had treated it on multiple occasions. He explained that a person suffering from the syndrome is completely reliant on caregivers and artificial support to breathe, and that a person with the syndrome is typically intubated, placed on a mechanical ventilator, given salt

13

solutions and Mannitol, and directed to the trauma team and a neurosurgeon. He further explained that because it is extremely rare for people with the syndrome to recover, they typically, through eye movements or their family, decide whether to continue or remove life support. He noted that people suffering from the syndrome usually remain in a paralyzed state until they die.

We find no merit whatsoever in plaintiff's contention that expert evidence was not required in this case because jurors could rely on their own common knowledge to determine whether defendant met the standard of care. Without citation to any authority involving similar facts, plaintiff asserts that this case falls within the common knowledge exception because defendant's negligence is demonstrated by its failure to undertake any "revival measures" for his comatose condition and its placement of him in "palliative-only care with Do Not Resuscitate (DNR) status." We disagree. This case is clearly not the type of case where the exception applies. It does not involve a foreign object left in a patient's body or any other similarly obvious negligent conduct. The medical treatment plaintiff received for his traumatic head injuries and whether it complied with the standard of care is not within the common knowledge of any layperson. As a consequence, once defendant submitted an expert declaration from Dr. Luce, in which he opined that defendant's conduct did not fall below the standard of care, plaintiff was obligated to submit conflicting expert evidence if he wished to establish a triable issue of fact. Generally, whether a doctor was negligent is " ' "a matter peculiarly within the knowledge of experts" ' " and can only be proved by expert evidence. (*Flowers v. Torrance Memorial Hospital Medical Center, supra,* 8 Cal.4th at p. 1001; see *Massey, supra*, 180 Cal.App.4th at pp. 694-695.) Accordingly, because plaintiff did not submit any expert evidence from which the trier of fact could conclude that the standard of care had not been met, we will affirm the trial court's order and subsequent entry of judgment. (*Borrayo v. Avery* (2016) 2 Cal.App.5th 304, 310 [when a doctor moves for summary judgment and supports his motion with an expert declaration that his conduct met the

14

standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence].)[7]

## DISPOSITION

The judgment is affirmed.  Defendant shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)


_____/s/_____
                                        Duarte, J.


We concur:


_____/s/_____
Raye, P. J.


_____/s/_____
Hoch, J.

---

[7]  Having concluded that plaintiff failed to establish a triable issue of fact as to defendant's compliance with the standard of care, we need not and do not address defendant's causation argument.