[No. D009850. Fourth Dist., Div. One. July 26, 1990.]

JARIDIJON SALASGUEVARA, a Minor, etc., Plaintiff and Appellant, v.
WYETH LABORATORIES, INC. et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976.1 and 976(b), this opinion is certified for publication with the exception of the section entitled "Motion to Extend Time for Expert Designation."

**COUNSEL**

Sheela & Sheela, Barton Sheela, Richard Amerian and Sharon Munson Swanson for Plaintiff and Appellant.

Morgan, Wenzel & McNicholas, Lee B. Wenzel, Timothy B. Bradford, Margaret O'Connor, Carl J. Pentis, Jennings, Engstrand & Hendrikson, Douglas R. Reynolds, Debra K. Maurer and James J. Wallace III for Defendants and Respondents.

## OPINION

WIEN, J.*—Jaridijon Salasguevara, a minor, by his guardian ad litem, Mary Hobbs, appeals from judgments entered in favor of defendants Dr. Frederick Frye (Dr. Frye) and Wyeth Laboratories (Wyeth) following defendants' successful motions for summary judgment.

### BACKGROUND

Plaintiff filed his complaint on January 13, 1984, against Wyeth and Dr. Frye and Dr. Ronald Lehman alleging personal injuries as a result of the administration of diptheria-pertussis-tetanus (DPT) vaccines. Dr. Lehman was dismissed from the action by plaintiff on May 6, 1986.

According to the declaration of Dr. Lehman, an associate of Dr. Frye, plaintiff was born on September 24, 1980, and after postnatal examinations over the next several months, on January 15, 1981, following a physical examination, was given a DPT immunization at the direction of Dr. Lehman. Subsequently, plaintiff suffered symptoms of "probable otitis media and retracted ear drums" as well as a history of fever. Plaintiff was then hospitalized and in his complaint alleges that in spite of having suffered seizures following the first immunization was administered a second DPT vaccination on March 9, 1981, by Dr. Frye, following which plaintiff suffered a further seizure.

Plaintiff has alleged that Wyeth manufactured, designed and sold the DPT vaccine administered to plaintiff and that Wyeth was negligent both in marketing the DPT vaccine and in failing to warn of the known dangers from the vaccine. Action was brought against Dr. Frye for medical malpractice based upon immunizing the plaintiff without taking a complete medical history and failing to warn of the dangers inherent in the vaccine given.

At the trial-setting conference on June 3, 1988, the court noted that the case could not be set for trial without a motion for preference. The plaintiff's subsequent motion for preference was granted at a hearing on June 28, 1988, at which time the defendants waived the five-year statute and the case was set for trial on March 17, 1989. The first exchange of expert witnesses was to be on August 26, 1988, and the second exchange on September 15, 1988. Both plaintiff and Dr. Frye failed to designate expert witnesses by August 26, 1988. On August 29, 1988, plaintiff requested an extension of time from Wyeth within which to designate experts. Wyeth denied the

---

* Assigned by the Chairperson of the Judicial Council.

request, whereupon plaintiff's counsel appeared before the court on September 7, 1988, seeking an extension until September 15, 1988, to file his expert witness designation. The request for extension was denied.

Based upon the fact that plaintiff was precluded from filing a designation of expert witnesses for trial and that the law required expert testimony to establish liability against the defendants, Dr. Frye and Wyeth filed motions for summary judgment. On December 27, 1988, the court heard defendants' motions. At the hearing plaintiff requested the court consider late-filed supplemental papers in support of his opposition to the motions. The court denied the request, observing that the judge presiding in the law and motion department had said "we don't consider late papers." An order granting Wyeth's motion was filed on January 9, 1989, and the order granting Frye's motion was filed on February 1, 1989. Thereafter judgment was entered, from which plaintiff appeals.

Plaintiff argues on appeal that the defendants failed to support their summary judgment motion with affidavits or declarations showing there is no triable issue as to a material fact and, therefore, that defendants were not entitled to a judgment as to a matter of law. Additionally, plaintiff argues that the court erred in not permitting a late designation of experts and finally that the court abused its discretion by failing to consider his late-filed supplemental opposition to defendants' motions for summary judgment.

DISCUSSION

*Summary Judgment Issues*

Summary judgment should be granted only when all of the papers show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc.,[2] § 437c.) ■ "It is a drastic remedy eliminating trial and therefore the moving party's declarations must be strictly construed and the opposing party's declaration liberally construed. [Citation.] ■ If there is any issue of material fact to be tried, summary judgment must be denied." (*Hepp* v. *Lockheed-California Co.* (1978) 86 Cal.App.3d 714, 717[150 Cal.Rptr. 408].) Doubts as to the propriety of summary judgment should be resolved against the moving party. (*Gomez* v. *Ticor* (1983) 145 Cal.App.3d 622, 627 [193 Cal.Rptr. 600].)

The moving party's showing must establish facts which negate the opponent's claim and justify a judgment in the moving party's favor. (*AARTS*

---

[2] All statutory references are to the Code of Civil Procedure unless otherwise specified.

*Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203].) It is the moving party's burden to make a sufficient showing that the claim is entirely without merit and if that showing is deficient summary judgment must be denied. (*Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 374 [182 Cal.Rptr. 629, 644 P.2d 822].)

"The motion must stand self-sufficient and cannot succeed because the opposition is weak. [Citations]. A party cannot succeed without disproving even those claims on which the opponent would have the burden of proof at trial. [Citations.]" (*AARTS Productions, Inc.* v. *Crocker National Bank, supra,* 179 Cal.3d at pp. 1064-1065.)

■ A summary judgment motion raises only questions of law regarding the construction and effect of the moving and opposing papers and therefore they are subject to independent review on appeal. (*AARTS Productions, Inc.* v. *Crocker National Bank, supra,* 179 Cal.App.3d at p. 1064.)

■ In this case, Wyeth moved for summary judgment upon the basis that "[p]laintiff cannot establish that acts of WYETH LABORATORIES, INC. caused the alleged injuries." The motion was supported solely by reference to portions of the deposition of Michael J. Sexton, M.D., stating:

"Q. Okay, Have you formed any opinion as to whether or not his neurological problems are in any way related to the DPT vaccine?

"A. Because of the nature of the relationship with Mrs. Hobbs, I've tried not to form an opinion because that would throw me into a potential adversary role with her.

"I personally don't think these disabilities are related to the administration of the DPT vaccine.

"Q. What is the basis of your opinion in that regard?

"A. He has shown steady improvement and he is doing things developmentally he was not doing as time has gone by. He is now self-ambulating; he's now on self-help skills. And my understanding of the DPT encephalopathy, it's an incredibly static condition."

In ruling on Wyeth's motion, the trial court appears to have incorrectly focused on the plaintiff's burden in stating: "The plaintiff has failed to set forth any medical evidence to suggest that there was any negligence in the care and treatment of the plaintiff." No reference whatsoever was made to Dr. Sexton's deposition testimony. Instead, the court improperly observed: "Concerning the Wyeth Laboratories, again, no competent medical testimo-

ny that this injection caused the plaintiff's injuries. They have a designation of experts, the laboratory, that is; that will testify that the substance is safe, it wasn't negligently designed nor manufactured, and warnings are provided, et cetera, et cetera." Of course, no such evidence by way of declaration in support of the motion by Wyeth was presented.

Nevertheless, because this court must independently review the moving papers, we must evaluate the deposition testimony of Dr. Sexton to determine if it contains competent opinion evidence negating plaintiff's claim that the DPT vaccine caused his injuries.

■ As the parties have agreed, medical causation can only be determined by expert medical testimony. (*Gin Non Louie* v. *Chinese Hospital Assn.* (1967) 249 Cal.App.2d 774, 784 [57 Cal.Rptr. 906]; *Stephenson* v. *Kaiser Foundation Hospitals* (1962) 203 Cal.App.2d 631, 635 [21 Cal.Rptr. 646].) The question therefore is whether Dr. Sexton has the medical expertise to offer competent medical testimony on the subject of causation involved in the administration of the DPT vaccine.

The test in each case is whether the witness has sufficient skill or experience in the particular field so that his testimony would be likely to assist the jury in the search for the truth. (*Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18 [210 Cal.Rptr. 762, 694 P.2d 1134].) As pointed out in *Mann*: "Some early cases were unbending in requiring expertise as to the precise injury involved in the litigation, as, e.g., not permitting an autopsy surgeon to testify on urology [citation]. Other authorities, however, have permitted variations, as, e.g., a pathologist was qualified to testify as to causes of aseptic necrosis [citation] . . . a pathologist and professor of pathology to testify on the subject of gynecology [citation]." (*Id.* at pp. 37-38.) In *Mann*, the trial court had rejected the declaration of a medical doctor, Dr. Fox, a diplomate in surgery and neurosurgery, who had rendered an opinion on behalf of the plaintiff concerning the failure of the defendant doctors to diagnose a fracture. One of the grounds for rejection was that it lacked the requisite foundational facts to qualify the doctor to testify about the standard of care. Applying the tests discussed, the Supreme Court reversed, holding that Dr. Fox had sufficient expertise to testify about the standard of care and to render an opinion about the failure of the defendants to diagnose a broken neck. The court pointed out that it would be unreasonable to assume that Dr. Fox, a surgeon and neurosurgeon, would not regularly read X-rays and radiologists' reports and be unfamiliar with the standard of care exercised by radiologists in reading X-rays and preparing reports.

■ In this case, Wyeth designated four expert witnesses to testify concerning liability issues, including causation. First, Wyeth named Eric L.

Hewlett, M.D., a microbiologist and a specialist in internal medicine who was expected to testify, inter alia, concerning the history, nature, composition and preparation of various pertussis vaccines, and in particular about the DPT vaccine manufactured by Wyeth. Second named was James D. Cherry, M.D., who practices and teaches in the department of pediatrics at U.C.L.A. Medical Center. It was represented that Dr. Cherry was an expert and had authored articles on the epidemiology of pertussis and pertussis vaccines. Presumably he would have given testimony concerning the causation issue. Third was Dr. Paul Wehrle, a board certified pediatrician. Fourth was Kenneth D. MacRae, M.A., Ph.D., F.I.S., a medical epidemiologist. Dr. MacRae was specifically expected to testify that "[DPT] vaccine did not cause minor plaintiff's condition, including his seizure disorder, mental retardation and developmental delay."

From the foregoing designation of experts, it would appear that the issues concerning the epidemiology of the DPT vaccine and the causation issues would be quite esoteric. Yet, Wyeth failed to support its motion with declarations from any of the foregoing designated experts, all having a high degree of expertise in the field.

Instead the motion was supported solely by a few excerpts from the deposition of Dr. Sexton, plaintiff's treating doctor who had been designated, not on liability issues, but as one of the treating doctors whom Wyeth expected to testify as to plaintiff's condition and present complaints. The supporting documents fail to show that Dr. Sexton has any training, experience or skill that would qualify him to give an opinion about DPT or the causation issues. The deposition testimony referred to discloses that Dr. Sexton first saw the plaintiff in 1982 for a routine physical examination and that the child was being seen for his neurological problems by a neurologist at University Hospital, U.C.S.D. Apparently at no time did the doctor discuss the case with any of the specialists who were treating the child for seizures. Those physicians, Dr. Trauner and Dr. Paa, were additionally designated as plaintiff's treating doctors, but no declaration by either of these doctors was filed in support of Wyeth's motion. When Dr. Sexton gave an opinion based upon his "understanding," there is no way, given the limited deposition excerpts submitted, to determine if that understanding was based upon the doctor's training, experience or skill. Lacking such necessary foundational predicates, the court must find that Wyeth failed to demonstrate Dr. Sexton's competence to render an opinion on the issue of causation. Therefore, since the motion depends for its success on Dr. Sexton's testimony, Wyeth's motion for summary judgment must be denied.

 Dr. Frye moved for summary judgment on the issues of negligence and causation on the ground that plaintiff was precluded from giving re-

quired expert testimony in support of his complaint. ■ While it is true that expert testimony is required to establish negligence in a medical malpractice case, *Landeros* v. *Flood* (1976) 17 Cal.3d 399 [131 Cal.Rptr. 69, 551 P.2d 389, 97 A.L.R.3d 324], a party need not rely on his own designated experts. He may instead call as a witness an expert designated by another party who has been deposed. (§ 2034, subd. (m)(1).)

In *Powell* v. *Superior Court* (1989) 211 Cal.App.3d 441 [259 Cal.Rptr. 390], it was held that the plaintiff could call as a witness a doctor designated by the defendant even though the plaintiff had not properly listed him as plaintiff's expert. The court held that section 2034 was not limited to the situation where a properly designated expert was not called by the party making the designation.

■ Again the trial court here incorrectly stated that it was the plaintiff's "burden to go forward and demonstrate there was some breach of the standard of care [by Dr. Frye]." The plaintiff has no such burden until the defendant negates the issue upon which the summary judgment is brought.

The rulings on both motions appear to be based on the preclusion of expert designation. As the court observed, "[t]he real problem is once they couldn't designate the experts, in a sense, the war was over." As to both motions, this overlooks the requirement that the plaintiff's case be negated before the burden is shifted to the plaintiff to make a case by filing counter-affidavits.[3]

Since no declarations or affidavits whatsoever were filed by Dr. Frye, his motion should have been denied.[4]

---

[3] In regard to the effect of the court's refusal to allow plaintiff to designate experts, the relevant statute recites that "the trial court shall exclude from *evidence* the expert opinion of any witness that is offered by any party who has unreasonably failed to [timely exchange information concerning the witness]." (Code Civ. Proc., § 2034, subd. (j), italics added.)

In the recent case of *Kennedy* v. *Modesto City Hospital* (1990) 221 Cal.App.3d 575 [270 Cal.Rptr. 544], decided after the hearing in this case, the Fifth District held that the foregoing exclusion applies only to trials and not to summary judgment proceedings. The court, therefore, held that the trial court had erred in granting the defendant's motion for summary judgment based on the trial court's exclusion of the declarations of the plaintiff's experts pursuant to subdivision (j).

In differentiating between summary judgment proceedings and trials, this decision is consistent with our opinion in this case.

[4] This decision makes it unnecessary to decide whether it was error to refuse to consider plaintiff's untimely filed opposition papers. However, the court should be cognizant of its obligation to exercise its independent discretion and not defer to the policy of the judge presiding over the law and motion department. (See *Iverson* v. *Superior Court* (1985) 167 Cal.App.3d 544, 549 [213 Cal.Rptr. 399].) This is particularly true when dealing with motions for summary judgment. (See also *Mann* v. *Cracchiolo, supra*, 38 Cal.3d at pp. 29-30.)

*Motion to Extend Time for Expert Designation\**

. . . . . . ` . . . . . . . . . . . . .

### DISPOSITION

Judgment reversed.

Wiener, Acting P. J., and Nares, J., concurred.

---

\*See footnote, *ante,* page 379.