Filed 5/3/24; Certified for Publication 5/28/24 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

SAN ANTONIO REGIONAL
HOSPITAL,

     Petitioner,

v.

THE SUPERIOR COURT OF SAN
BERNARDINO COUNTY,

     Respondent;

JOSEPH MUSHARBASH, Individually
and as Successor in Interest, etc.

     Real Party in Interest.

E082481

(Super.Ct.No. CIVSB2217117)

OPINION

ORIGINAL PROCEEDINGS; petition for extraordinary writ. Jeffrey Erickson,

Judge. Petition granted.

Horvitz & Levy, Scott P. Dixler, Jason Y. Siu; Davis, Grass, Goldstein & Finlay,

Jeffery W. Grass, and Evelin Duenas for Petitioner.

No appearance for Respondent.

Calderwood Law Group and Steven F. Calderwood, for Real Party in Interest.

1

In this wrongful death case arising from alleged medical malpractice, the defendant hospital seeks a writ of mandate directing the trial court to grant it summary judgment. The hospital argues the plaintiff's only expert lacks the requisite skill or experience to opine on the standard of care or causation elements of the plaintiff's claim, so there are no triable issues of fact. We agree and therefore grant the petition.

## I. BACKGROUND

Real party in interest Joseph Musharbash sued petitioner San Antonio Regional Hospital, among others, after his adult son Michael died while being treated for a traumatic brain injury at the hospital. Michael was treated first in the hospital's emergency room and then in the intensive care unit. His treatment included several surgeries attempting to relieve intercranial pressure; first, an "external ventricular drain," and later a craniectomy. Musharbash's complaint alleges the hospital provided inadequate care by failing to properly evaluate Michael's injuries and "undertake appropriate courses of action." In interrogatories, Musharbash stated the hospital was liable for Michael's death because "surgical intervention" was only belatedly performed, and because nursing staff failed to adequately monitor Michael, inform his doctors of his status, and advocate for the need for earlier surgical intervention. In briefing after our order to show cause, Musharbash specifies it is now "undisputed that the care and treatment of decedent in the Emergency Department at [the hospital] adhered to the

2

standard of care," and that his claim focuses on treatment provided after he was moved to the hospital's intensive care unit.[1]

The hospital moved for summary judgment, based in part on the declarations of two doctors who opined that Michael had received adequate treatment. In opposition, Musharbash submitted a single expert declaration, by Rhona Wang, a certified registered nurse anesthetist. Wang declared that she was qualified to opine on Michael's care because she had been employed as a nurse and nurse anesthetist since 2002 for several Los Angeles hospitals. She had provided anesthesia to "neuro/trauma patients" and had worked in various cardiac-related observation and intensive care units. She opined: "Based on my education, training, and experience, and my review of the records in this case, to a reasonable degree of medical probability, there was a delay in the performance of the [external ventricular drain] and/or craniectomy, delays in contacting physicians regarding changes in [Michael's] clinical status, and/or actions or inactions by healthcare providers at [the hospital] in implementing treatment modalities, which were a substantial factor in causing or contributing to [Michael's] death."

The trial court found Wang's declaration demonstrated triable issues about the standard of care and causation elements of Musharbash's claim, and it denied the hospital's motion for summary judgment. Defendants timely petitioned for writ relief, and we issued an order to show cause.

---

[1] Earlier, including in his opposition to the hospital's motion for summary judgment, Musharbash took the position that the emergency room care, too, was inadequate.

## II. DISCUSSION

Musharbash does not contest that the hospital met its initial burden of production, shifting the burden to him to present evidence establishing a triable issue of material fact. (See Code Civ. Proc., § 437c, subd. (p)(2).) Thus, our question is whether Wang's declaration raises any triable issues as to whether doctors or nurses at the hospital were negligent in treating Musharbash's son. It does not.

A court must grant summary judgment if there is no triable issue of material fact and the moving party is entitled to judgment in its favor as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A party challenging denial of summary judgment may do so by writ petition. (*Id.*, subd. (m)(1).) "'Where the trial court's denial of a motion for summary judgment will result in trial on nonactionable claims, a writ of mandate will issue.'" (*CRST, Inc. v. Superior Court* (2017) 11 Cal.App.5th 1255, 1259-1260.) We review a trial court's decision on summary judgment de novo, determining independently whether the undisputed material facts support summary judgment. (*Id.* at p. 1260; *Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.)

The tort of medical malpractice underlies Musharbash's wrongful death claim. (See *Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1263 ["'The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages"].) "The elements of a cause of action for medical malpractice are: (1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate

4

causal connection between the negligent conduct and the injury; and (4) resulting loss or damage." (*Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 305.)

"The first element, standard of care, is the key issue in a malpractice action and can only be proved by expert testimony, unless the circumstances are such that the required conduct is within the layperson's common knowledge." (*Lattimore v. Dickey* (2015) 239 Cal.App.4th 959, 968 (*Lattimore*).) Proving the third element, causation, also requires "'competent expert testimony.'" (*Miranda v. Bomel Construction Co., Inc.* (2010) 187 Cal.App.4th 1326, 1336 (*Miranda*); accord, *Salasguevara v. Wyeth Laboratories, Inc.* (1990) 222 Cal.App.3d 379, 385 (*Salasguevara*) ["medical causation can only be determined by expert medical testimony"].)

In our order to show cause, we invited the parties to discuss Health and Safety Code, section 1799.110's "preclusive effect on the testimony of expert witnesses." That statute states: "In any action for damages involving a claim of negligence against a physician and surgeon providing emergency medical coverage for a general acute care hospital emergency department, the court shall admit expert medical testimony only from physicians and surgeons who have had substantial professional experience within the last five years while assigned to provide emergency medical coverage in a general acute care hospital emergency department."[2] (Health & Saf. Code, § 1799.110, subd. (c).) "Furthermore, [Health and Safety Code,] section 1799.110, subdivision (c) applies to any

---

[2] When we issued our order to show cause, Musharbash had not yet clarified he no longer asserts any claims based on treatment provided in the hospital's emergency room.

5

suit involving a claim of negligent emergency treatment by a hospital emergency room physician whether or not that physician is named as a defendant." (*Jutzi v. County of Los Angeles* (1987) 196 Cal.App.3d 637, 646-647 (*Jutzi*).) There is, however, some case law holding this subdivision applies only to testimony about the standard of care, and does not apply to testimony about causation or damages. (See *Stokes v. Baker* (2019) 35 Cal.App.5th 946, 966.)

The parties dispute whether this statutory limitation applies only to expert testimony about care provided in the hospital's emergency department, or whether it extends also to expert testimony about care provided in the intensive care unit. There is some authority in support of both positions. In *Jutzi*, *supra*, 196 Cal.App.3d at p. 647, the court focused on whether the treatment rendered constituted emergency medical care, rather than what hospital department provided the care. Other cases have disagreed, finding the statute applies whenever "an emergency room physician treats a patient in a general acute care hospital emergency department," and no matter the nature of the treatment. (*James v. St. Elizabeth Community Hospital* (1994) 30 Cal.App.4th 73, 80; accord *Zavala v. Board of Trustees* (1993) 16 Cal.App.4th 1755, 1762.) Relatedly, there is room for argument about how to define the terms "emergency room physician" and "emergency medical coverage." (See *Miranda v. National Emergency Services, Inc.* (1995) 35 Cal.App.4th 894, 899 [considering whether defendant doctors "were providing 'emergency medical coverage' . . . at the time the asserted negligence occurred" and whether plaintiff's expert had statutorily required expertise].)

6

We need not resolve this thicket of interpretive questions. We focus instead on the generally applicable rules about admissibility of expert testimony. An expert is qualified to testify where she possesses special skill or experience in her field "'so that [her] testimony [is] likely to assist the jury in the search for the truth.'" (*Lattimore*, *supra*, 239 Cal.App.4th at p. 969.) Expert testimony is properly excluded as speculative where the expert lacks expertise over the subject matter of the litigation. (E.g., *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 759.)

As Musharbash emphasizes, "[q]ualifications other than a license to practice medicine may serve to qualify a witness to give a medical opinion." (*People v. Catlin* (2001) 26 Cal.4th 81, 131-132 (*Catlin*); accord *People v. Villarreal* (1985) 173 Cal.App.3d 1136, 1142 ["Because of the dramatic growth of diverse interdisciplinary studies in recent times, often individuals of different nonphysician professions are called upon to give medical opinions or at least opinions involving some medical expertise"], disapproved on another point by *In re Cabrera* (2023) 14 Cal.5th 476.) Nevertheless, there must be some aspect of the expert's qualifications or experience to show the expert has competencies "beyond common experience" that bear on the relevant factual questions. (Evid. Code, § 801, subd. (a).)

For example, *Catlin* considers the qualifications of a clinical toxicologist, called to testify that a murder victim died of poisoning by an agricultural chemical called paraquat. (*Catlin*, *supra*, 26 Cal.4th at p. 131.) The expert, though lacking a medical degree, had "advanced training in occupational medicine, physiology, and pharmacology, and had

7

worked in the area of agricultural poison toxicology for 18 years." (*Id.* at p. 132.) He also had extensive "specialized experience in paraquat toxicology"; he had worked "at a health center operated by the sole distributor of paraquat in the United States," "consulted and advised physicians in many cases of paraquat poisoning," "participated in many research projects and in biannual conferences on the subject of paraquat toxicology," and "provided laboratory services to analyze human tissue samples connected with incidents of paraquat poisoning." (*Ibid.*) Our Supreme Court found the trial court did not abuse its discretion in allowing the expert to opine about the victim's cause of death and related medical topics, even though he lacked a medical degree and was not trained in pathology. (*Ibid.*)

Wang's qualifications are not analogous to those of the expert in *Catlin*. The gravamen of Musharbash's lawsuit is that Michael died because of delays in surgical intervention. (See *Lattimore*, *supra*, 239 Cal.App.4th at p. 967 [in ruling on summary judgment, court first identifies issues as framed by pleadings].) Nothing in Wang's declaration establishes that her experience as a nurse anesthetist or trauma unit nurse gave her the specialized knowledge required to opine on the standard of care applicable to an intensive care unit neurosurgeon deciding whether a severe traumatic brain injury requires immediate surgical intervention, or whether that standard of care was breached. (See *id.* at p. 968 ["In those cases where a medical specialist is alleged to have acted negligently, the 'specialist must possess and use the learning, care and skill normally possessed and exercised by practitioners of that specialty under the same or similar

circumstances'"].)  The declaration includes no facts indicating Wang is competent to determine when surgical treatment is warranted for a brain injury.  That is simply not her job as a nurse; it is undisputed that nurses are not ultimately responsible for deciding the best course of treatment.[3]  And nothing in the record shows she has otherwise acquired expertise in pathologies of the brain and treatment techniques equivalent to that of a neurosurgeon.

For similar reasons, Wang's declaration does not establish she is competent to opine on causation.  (See *Miranda*, *supra*, 187 Cal.App.4th at p. 1336; *Salasguevara*, *supra*, 222 Cal.App.3d at p. 385.)  In this case, causation includes both whether any delayed nurse communications affected any neurosurgeon's treatment decisions, and whether any delay in surgical treatment was a substantial factor in Michael's death.  Wang's declaration lacks any basis to conclude she is competent to opine on either issue.  Of course, a nurse has some basis to opine on when and how a nurse should communicate with doctors regarding patient care.  The perspective of the doctor, however, is required to opine as to the role such communications play in the doctor's decision making process, both in general and in this case, and whether a decision to operate earlier likely would have led to a different outcome for Musharbash's son.

---

[3]  In his opposition to the hospital's separate statement, Musharbash asserts nurses are obligated to perform other tasks, including coordinating care and carrying out orders, but he does not expressly dispute the hospital's proffered fact that nurses "do not make treatment decisions."

Since Wang was Musharbash's only proffered expert, her lack of competence to opine on the applicable standard of care and causation is fatal to his claim. The trial court should have granted summary judgment for the hospital.

## III. DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its order denying petitioner's motion for summary judgment and to enter a new order granting the motion for summary judgment.

Petitioner to recover the costs of this petition.

RAPHAEL _____
                                                J.

We concur:

MILLER _____
                Acting P. J.

FIELDS _____
                        J.

10

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| SAN ANTONIO REGIONAL HOSPITAL, | E082481 |
| Petitioner, | (Super.Ct.No. CIVSB2217117) |
| v. | |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | |
| Respondent; | |
| JOSEPH MUSHARBASH, Individually and as Successor in Interest, etc. | |
| Real Party in Interest. | |

  Requests having been made to this court pursuant to California Rules of Court, rule 8.1120(a) for publication of a nonpublished opinion heretofore filed in the above-entitled matter on May 20, 2024 and May 22, 2024, and it appearing that the opinion meets the standard for publication as specified in California Rules of Court, rule 8.1105(c),

  IT IS ORDERED that said opinion be certified for publication pursuant to California Rules of Court, rule 8.1105(b).  The opinion filed in this matter on May 3, 2024, is certified for publication.

  CERTIFIED FOR PUBLICATION

RAPHAEL
            J.

We concur:

MILLER
       Acting P. J.

FIELDS

J.

MAILING LIST FOR CASE: E082481
San Antonio Regional Hospital v. The Superior Court; Joseph Musharbash

Superior Court Clerk
San Bernardino County
8303 N. Haven Avenue
Rancho Cucamonga, CA 91730

Jason York Hoo Siu
Horvitz & Levy LLP
505 Sansome Street, Suite 1550
San Francisco, CA 94111-3149

Scott Philip Dixler
Horvitz & Levy LLP
3601 West Olive Avenue, 8th Floor
Burbank, CA 91505

Jeffrey W. Grass
Davis, Grass, Goldstein & Finlay
3281 East Guasti Road, Suite 350
Ontario, CA 91761

Evelin Duenas
Davis, Grass, Goldstein & Finlay
3281 East Guasti Road, Suite 350
Ontario, CA 91761

Steven Farrell Calderwood
Calderwood Law Group
P.O. Box 1128
Yorba Linda, CA 92885-1128