Filed 10/2/25  Zajac v. Liau CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| RICHARD ZAJAC, | B334798 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV33144) |
| v. | |
| LINDA LIAU M.D., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lisa K. Sepe-Wiesenfeld, Judge.  Reversed.

Workman Law & Litigation and Seth E. Workman for Plaintiff and Appellant.

Cole Pedroza, Kenneth R. Pedroza and Amy E. Rankin; Kelly Trotter & Franzen, John C. Kelly and Steven Joseph Wysocky for Defendant and Respondent.

## INTRODUCTION

In this case based on medical negligence, defendant Linda Liau, M.D., moved for summary judgment on the sole basis that causation for plaintiff Richard Zajac's injury could not be determined to a reasonable degree of medical probability. The trial court granted the motion on the basis that Zajac's expert witness, an anesthesiologist, was not qualified to opine about the standard of care expected of a neurologist such as Liau, and therefore Zajac failed to meet his burden to show a triable issue of material fact.

We reverse. Liau's motion for summary judgment was very narrow, and she met her burden on summary judgment by negating only the element of causation. To defeat summary judgment, Zajac needed only to demonstrate a triable issue of fact as to causation. He did so. Liau's motion for summary judgment therefore should have been denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Zajac sued Liau and others relating to a surgery. The complaint is not in the record on appeal. According to the undisputed facts relevant to Liau's motion for summary judgment, Zajac had surgery on September 18, 2018 at Ronald Reagan UCLA Medical Center "for craniotomy for resection of a recurrent glioma, which is a type of brain tumor." Zajac suffered a severe brain injury causing disability.

The parties agree that Zajac's third amended complaint included two causes of action against Liau: medical negligence and dependent adult abuse. The defendants—Liau, Andrew

2

Hudson, M.D., and the Regents of the University of California—moved for summary judgment.[1]

## A. Motion for summary judgment

Defendants' motion for summary judgment stated that Zajac, age 24, had surgery on September 18, 2018 "for reoperation on a low-grade glioma brain tumor." Zajac then "suffered from diffuse ischemic changes in the brain." Defendants do not define these terms.[2] Defendants argued that "the mechanism of the ischemic changes and associated alleged brain injury cannot be identified within a reasonable degree of medical probability."

Defendants noted that Zajac's operative complaint alleged, "As a result of negligent operative and post-operative care, as managed by the lead neurosurgeon, Defendant Dr. Liau, and lead anesthesiologist, Dr. Hudson, Plaintiff suffered a severe brain injury that has caused substantial and permanent disability." Defendants asserted that "no causal relationship can be established between the alleged medical negligence and/or alleged dependent adult abuse" and Zajac's injuries. They reiterated that "it is the element of causation that defendants challenge by way of this motion."

---

[1]     A fourth defendant, Albert Lai, M.D., also moved for summary judgment, but he was not involved in Zajac's surgery or related care. Zajac's claims against him are not relevant to this appeal.

[2]     Much of the record and briefing in this case includes medical jargon without plain-language explanations. We quote the parties' phrasing as it appears in the record and briefs.

3

Defendants submitted the declaration of Arun P. Amar, M.D., a neurosurgery expert.[3] Amar stated that based on his review of Zajac's medical records, Zajac "suffered from diffuse ischemic changes in the brain; however, the mechanism of same is unclear and I do not believe any specific cause can be identified within a reasonable medical probability." Amar stated that he considered hypotension, hypoxia, seizure activity, and hemorrhage as potential causes, but ruled each of these out because they were not supported by the medical records. Amar also stated that "given the fact that the patient was able to be successfully extubated during the surgery, with the ability to cooperate and speak while Dr. Liau operated on the 'speech area' of the brain, it is evident the patient was free of injury at that point." Thus, "the cause of plaintiff's alleged injury remains unclear and is unable to be determined within a reasonable degree of medical probability." Amar concluded, "Accordingly, it is my conclusion that there is no credible evidence to suggest that any act or omission by any of the defendants herein, either individually or collectively, contributed to plaintiff's injury, within a reasonable degree of medical probability."

Defendants argued that Amar's declaration established that there was no "causal connection" between defendants' conduct and Zajac's injuries, and therefore Zajac could not establish either his medical negligence cause of action or

---

[3] Defendants' motion states that four exhibits are attached: Amar's curriculum vitae, Zajac's medical records that Amar reviewed, Zajac's third amended complaint, and defendants' answer to that complaint. These exhibits are not included in the record on appeal. Some of Zajac's medical records are included in the record with Zajac's opposition.

dependent adult cause of action. They asserted that the motion should be granted because no "act or omission by any of the defendants . . . contributed to plaintiff's injury."

## B.    Opposition

Zajac argued in his opposition that "Defendants' motion for summary judgment completely misses the mark in this case. Plaintiff's claims are not limited to the initial injury to his brain. Well within Plaintiff's claims are allegations that Defendants were negligent in their diagnosis, care, and treatment of Plaintiff. This obviously includes diagnosis and treatment of symptoms arising during the subject surgery on September 18, 2018. . . . Defendants failed to properly diagnose and treat Plaintiff for ischemic brain injury despite repeated indications of ongoing and worsening ischemic brain injury. In fact, Defendants allowed three critical hours to pass before any steps were taken to actually stop or decrease the ischemic death of brain tissue." Zajac argued that summary judgment must be denied because "Defendants clearly and undisputedly failed to properly treat Plaintiff after the initial injury while he was still within Defendants' care and custody."

Zajac submitted the declaration of Sara Meitzen, M.D., an expert anesthesiologist who stated that she was "familiar with the standard of care for anesthesiologists in the community." Based on her review of Zajac's medical records, she stated that Zajac was diagnosed with a glioma (tumor) in August 2016, and underwent surgery in October 2016. In August 2018, Zajac began participating in a clinical drug trial. In September 2018, Liau recommended a second surgery.

According to Meitzen, on the day of the surgery at issue a scopolamine patch was placed on Zajac's ankle before the

surgery. "During the surgery, Mr. Zajac was allowed to awaken for language and motor mapping and tumor excision. Function was documented as normal upon completion of tumor resection. Following, Mr. Zajac was anesthetized and reintubated for the remainder of the surgery." "[A]t approximately 3:15 p.m. and just prior to completion of surgery, the neuromonitoring technician reported periods of EEG attenuation (EEG burst suppression)," which can be a sign of "ischemic cerebral injury (brain damage related to poor brain perfusion and oxygen delivery)."

Meitzen stated that "Dr. Liau was informed of the sudden EEG burst suppression and denied further testing to evaluate for causation, particularly testing to corroborate the possible presence of cerebral ischemia." According to the pre-surgery plan, Zajac was to be admitted to the neuro intensive care unit (neuro ICU) following the surgery. However, there were no available beds in the neuro ICU, so Zajac was transported to the post-anesthesia care unit (PACU) instead. "Dr. Hudson extubated Mr. Zajac at 4:09 p.m."

Meitzen discussed several observations of Zajac's state of consciousness and a variety of tests performed on Zajac, including a CT scan. She stated, "All definitive steps to decrease Mr. Zajac's intracranial pressure, and thus improve cerebral blood flow and oxygen delivery, were not undertaken until after 6:00 p.m., approximately 3 hours after neuromonitoring demonstrated burst suppression consistent with brain ischemia and approximately 2 hours after Mr. Zajac's arrival to the PACU unresponsive and unconscious." An MRI was ordered at 6:36 p.m., was completed at 9:51 p.m., and the results were communicated to "Zajac's treaters" at 10:36 p.m.; it showed

6

"diffuse cerebral edema and findings suggestive of global hypoxic injury (anoxic brain injury)." Zajac was then admitted to the neuro ICU and "treated for global hypoxic brain injury." "An exhaustive workup for the etiology of Mr. Zajac's diffuse postoperative cerebral edema and anoxic brain injury was negative. An exhaustive workup for infectious etiology, including syphilis, HIV and herpes, was also negative."

Meitzen's declaration stated that after Zajac was discharged on October 11, 2018, he "was noted to have several impairments, including but not limited to severe dysarthria and unintelligible speech, significant dysphagia (difficulty swallowing safely), ambulation difficulties with shuffling gait requiring maximal assistance, and impaired balance." She continued, "Mr. Zajac now has several impairments, including but not limited to severe limitations with his previous form of employment given his ongoing difficulty with speech and fine motor skills, inability to lift objects of over 5 pounds, and chronic pain and spasticity in his extremities."

Meitzen opined that "Defendants, Dr. Hudson, Dr. Liau, and Regents were negligent in their provision of medical care to Mr. Zajac." She continued, "Specifically, Dr. Liau and Dr. Hudson failed to investigate Mr. Zajac's EEG changes indicating hypoxic brain injury. Regardless of the initial cause of ischemia, the standard of care required immediate action to optimize brain perfusion . . . ." She stated, "[I]t is my professional opinion to a reasonable degree of medical probability that . . . Dr. Liau did not perform a neurological exam timely following the extubation of Mr. Zajac and therefore fell below the standard of care. . . . In this case, failure to perform a timely neurological exam led to prolonged impaired blood flow to Mr. Zajac's brain and severe

7

injury."[4]  In addition, "Dr. Liau deviated from the standard of care in not promptly ordering an arterial blood gas during the initial signs of unconsciousness and hypoventilation, which further caused severe brain injury to Mr. Zajac."  She further stated, "[I]t is my professional opinion, to a reasonable degree of medical probability, that the complications that Mr. Zajac suffered during and after his craniotomy with tumor resection on September 18, 2018, are directly causally related to the negligence of Defendants, Dr. Hudson, Dr. Liau, and Regents."  Meitzen opined that "had Defendants complied with the applicable standard of care, Mr. Zajac's prognosis would have been significantly better."

Zajac noted in his opposition that Meitzen opined that defendants' actions were substantial factors in causing his injury, including the exacerbation of harm caused by the delay in treatment of the initial injury.  Zajac argued that Meitzen's opinion established a triable issue of material fact, so defendants' motion should be denied.

## C.   **Reply**

In their reply, defendants conceded that Zajac established a triable issue of material fact as to Hudson and Regents, but argued that summary judgment should be granted in favor of Liau.  They noted that Meitzen was an anesthesiologist, and in her declaration stated that she was familiar with the standard of care for anesthesiologists—not neurosurgeons.  In addition, Meitzen did not "state in her declaration she has either performed, observed, or otherwise participated in any part of the

---

[4]     Meitzen also provided opinions specific to other defendants' treatment of Zajac, which are irrelevant to this appeal and therefore not included in this summary.

8

treatment of a glioma. These omissions render the declaration entirely inapplicable as to neurosurgeon Dr. Liau, requiring the motion to be granted." Defendants argued, "Where Dr. Meitzen has never performed neurosurgery, is not qualified to perform neurosurgery, and lacks all training and education in neuro-oncology or neurosurgery, her opinions simply lack foundation and are speculative."

Defendants also submitted written objections to Meitzen's declaration, asserting that her opinions were speculative and lacked foundation, citing Evidence Code sections 351, 801, 802, and 1400.) They made nine separate objections, including one objection to the declaration as a whole, but each objection stated as its sole basis that Meitzen "is an anesthesiologist and not a neurosurgeon. She professes no familiarity with the standard of care of a neurosurgeon, and lacks the requisite education, training, and experience to offer any such opinion."

**D. Ruling**

The trial court issued a tentative ruling granting the motion for summary judgment for Liau. After a hearing, the court took the matter under submission.

The court issued a written ruling granting the motion for summary judgment for Liau. The court stated that Amar's declaration stated that defendants' action did not cause or contribute to Zajac's injuries, which "allows Defendants to meet their burden of establishing that there is no triable issue of material fact as to Plaintiff's medical malpractice and dependent adult abuse claims because Defendants did not cause Plaintiff's harm." In opposition, "as to the claims against Dr. Liau, there is no evidence that allows the Court to conclude that [Meitzen], an anesthesiologist, is qualified to render an opinion on the standard

9

of care of a neurologist." The court discussed legal authority pertaining to expert qualifications, then stated, "Defendants note that Dr. Meitzen states no knowledge, learning, or skill with neurosurgery, what tests should be administered or what may be required as to the standard of care of a brain surgeon. The Court is not persuaded by Plaintiff's argument and her opinion as to Dr. Liau must be excluded from evidence, as she is unqualified to render an opinion as to the standard of care applicable to Dr. Liau, such that Plaintiff has failed to sufficiently create a triable issue of material fact as to Plaintiff's claims against Dr. Liau."

The court then stated, "Defendants have established there is no triable issue as to whether Dr. Liau caused Plaintiff's harm, and Plaintiff has failed to provide competent evidence to establish that Dr. Liau caused Plaintiff's harm." The court also sustained defendants' objections to Meitzen's opinions "in their entirety" "as they relate to" Liau.

The court entered judgment in favor of Liau. Zajac timely appealed.

## DISCUSSION

Zajac asserts two arguments on appeal. First, he contends Liau's motion failed to shift the summary judgment burden, so the motion should have been denied. Second, he argues the trial court erred in granting the motion after sustaining defendants' objection to Meitzen's declaration. We find that defendants' motion and evidence were sufficient to shift the burden as to the element of causation. Zajac's opposition and evidence were sufficient to demonstrate a triable issue of fact as to causation. The motion therefore should have been denied.

"On appeal from a summary judgment, we review the record de novo to determine whether triable issues of material

10

fact exist." (*Carver v. Volkswagen Group of America, Inc.* (2024) 107 Cal.App.5th 864, 877.)  We do so by "viewing the evidence in the light most favorable to the plaintiff as the losing party and resolving any evidentiary doubts or ambiguities in [the plaintiff's] favor." (*Bailey v. San Francisco Dist. Attorney's Office* (2024) 16 Cal.5th 611, 620.)  We review the trial court's evidentiary rulings on summary judgment for abuse of discretion.  (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 852.)

A defendant moving for summary judgment bears the burden of proving that "there is no triable issue as to any material fact."  (Code Civ. Proc., § 437c, subd. (c).)  A defendant may meet this burden by demonstrating that "one or more elements of the cause of action . . . cannot be established."  (*Id.*, subd. (p)(2).)  If the defendant meets that burden, "the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action."  (*Ibid.*)

Zajac asserts that Liau moved for summary judgment "on the sole basis that her retained expert could not determine the cause of [Zajac's] initial injury during the subject surgery."  Zajac argues that this was not sufficient to address all of his allegations, because he also alleged that Liau failed to properly take action *after* the initial signs of injury, including by failing to have Zajac moved to the neuro ICU and by delaying treatment.  Zajac contends that because the motion and Amar's opinion addressed only the initial cause of the injury, not any treatment thereafter, Liau "did not set forth evidence that addressed all claims against her," and did not shift her summary judgment burden.

Typically, "[t]he first step in reviewing a [ruling on a] motion for summary judgment is to 'identify the issues framed by

11

the pleadings' because the motion must show 'there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading.'" (*Diamond v. Schweitzer* (2025) 110 Cal.App.5th 866, 878.)  We are prevented from doing so here, because Zajac did not include his operative complaint in the record on appeal.  The appellant bears the burden of providing an adequate appellate record, and failure to provide an adequate record on an issue requires that the issue be resolved against the appellant.  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.)  Thus, to the extent there is any lack of clarity about what Zajac alleged, that issue must be construed against Zajac.

The parties agree that Zajac alleged causes of action for medical negligence and dependent adult abuse.  Causation is an element of each of these claims.  "'The elements of a cause of action for medical malpractice are: (1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage.'" (*San Antonio Regional Hospital v. Superior Court* (2024) 102 Cal.App.5th 346, 350 (*San Antonio*).)  Assuming the dependent adult abuse cause of action was alleged under the Elder Abuse and Dependent Adult Civil Protection Act, Welfare and Institutions Code, section 15600 et seq., such a claim requires, in part, that the plaintiff "allege  (and ultimately prove by clear and convincing evidence) that the neglect caused the elder or dependent adult to suffer physical harm, pain or mental suffering." (*Carter v. Prime Healthcare Paradise Valley LLC* (2011) 198 Cal.App.4th 396, 407.)

12

"The law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony." (*Jones v. Ortho Pharmaceutical Corp.* (1985) 163 Cal.App.3d 396, 402.) Thus, if Liau's motion demonstrated that her actions did not cause Zajac's harm, she met her initial summary judgment burden to show that "one or more elements of [Zajac's] cause of action . . . cannot be established." (Code Civ. Proc., § 437c, subd. (p)(2).)

The motion, with Amar's declaration, met this burden with respect to the element of causation. Amar stated that the cause of Zajac's brain injury could not be determined, and there was "no credible evidence to suggest that any act or omission by any of the defendants herein, either individually or collectively, contributed to plaintiff's injury."

Zajac argues that the initial injury was only "one basis of relief" asserted, and Liau's motion for summary judgment failed to "offer any evidence as to [her] conduct after the signs of complications arose during surgery." Although Amar's declaration was not particularly detailed, it was broad enough to address the element of causation throughout Liau's care. Amar's statement that there was no evidence that defendants "contributed" to Zajac's injury addressed causation generally, and based on the limited record before us, was sufficient to meet defendants' initial burden to show that the causation element could not be met. The burden therefore shifted to Zajac.

Zajac met his burden. Meitzen's declaration stated that "Dr. Liau and Dr. Hudson failed to investigate Mr. Zajac's EEG changes indicating hypoxic brain injury." Meitzen discussed the various actions that could have been taken, and stated, "In this

13

case, each of these measures was delayed for hours, leading to severe brain injury for Mr. Zajac." She also stated that "Dr. Hudson and Dr. Liau did not perform a neurological exam timely following the extubation of Mr. Zajac," and that "failure to perform a timely neurological exam led to prolonged impaired blood flow to Mr. Zajac's brain and severe injury." She further stated that Dr. Liau did not promptly order "an arterial blood gas during the initial signs of unconsciousness and hypoventilation, which further caused severe brain injury to Mr. Zajac." In addition, she stated that "the complications that Mr. Zajac suffered during and after his craniotomy with tumor resection on September 18, 2018, are directly causally related to the negligence of Defendants, Dr. Hudson, Dr. Liau, and Regents." These statements were sufficient to demonstrate a triable issue of material fact as to whether Liau's actions caused or contributed to Zajac's injuries.

Notably, Liau did not object to Meitzen's opinions as to causation. (See *Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 39 [on de novo review of a summary judgment, we consider all evidence submitted except that to which objections were made and sustained].) Liau's written objections addressed only Mietzen's qualifications to opine as to the standard of care for a neurosurgeon; Liau did not object to Meitzen's opinions about causation or her qualifications to offer such an opinion. "Evidentiary objections not made at the hearing shall be deemed waived." (Code Civ. Proc., §437c, subd. (b)(5).)

At oral argument on appeal, Liau argued for the first time that a comment made during the summary judgment hearing should be interpreted as a "clarification" that she also objected to Meitzen's qualifications to offer an opinion on causation. We

14

decline to address an argument not included in the parties' briefs and raised for the first time at oral argument. (*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.* (2018) 6 Cal.5th 59, 87 fn. 10.) Moreover, the comment is not a clear objection, and we resolve any evidentiary doubts or ambiguities in the opposing party's favor. (*Bailey v. San Francisco Dist. Attorney's Office* (2024) 16 Cal.5th 611, 620.) Liau has thus forfeited any argument that Meitzen was unqualified to opine as to the cause of Zajac's injuries.

Zajac therefore met his burden to show a triable issue of fact as to the element of causation, the only element for which defendants shifted the burden. As such, the motion should have been denied. We need not address Zajac's second contention on appeal that the trial court erred in sustaining defendants' objection to the declaration of Meitzen on the grounds that as an anesthesiologist, Meitzen was not qualified to opine regarding the standard of care for a neurologist. Defendants' motion did not place the standard of care or any breach of that standard into contention. Thus, Zajac did not have any obligation to produce competent expert testimony about the standard of care to defeat summary judgment. (See, e.g., *Salasguevara v. Wyeth Laboratories, Inc.* (1990) 222 Cal.App.3d 379, 387.)

## DISPOSITION

The judgment is reversed.  Zajac is entitled to recover his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, ACTING P. J.

We concur:


MORI, J.


TAMZARIAN, J.


16